JAMES JORDAN AND GEO. H. BUCKMAN v. LENA MCNEIL.

1. ACTION TO CANCEL FRAUDULENT DEED; *Joint Interest of Defendants.* P., through fraud and deceit, and without consideration, procured the execution of a deed of conveyance of land from M. to himself, and the deed was duly recorded. Afterward, P. mortgaged the property to J. and deeded it to B., both J. and B. acting innocently and in good faith. Both the mortgage and the deed were afterward duly recorded. Afterward M. commenced an action against J. and B., to cancel both of said deeds and the mortgage, and judgment was rendered in her favor. J. and B. then jointly brought the case to the supreme court on petition in error. The plaintiff below, defendant in error, then moved to dismiss the petition in error, on the ground that the plaintiffs in error have no joint or common interest in the controversy. *Held,* That the motion will be overruled.

2. DEMURRERS, NOT FRIVOLOUS; *Right to Answer.* Where a petition of M. against J. and B. alleges that P., through fraud and deceit and without consideration, procured the execution of a deed of conveyance of land from M. to P., which deed was duly recorded, and that P. then mortgaged the property to J. and deeded it to B., which deed and mortgage were duly recorded, and that M., during all this time, was in the actual, open and exclusive possession of the property, and then asks that said deeds and mortgage be canceled, and J. and B. each demur generally to this petition, *held,* that the demurrers are not so frivolous that by filing them, J. and B. forfeit their right, by making a proper showing, to file answers setting forth any defenses which they may have.

3. INNOCENT PURCHASER *from Grantee in Fraudulent Deed.* And in such a case as the above, where, after the demurrers have been overruled, J. and B. make sworn statements, alleging innocence and good faith in all things on their part, denying that M. had the possession of the property at the time of their transactions with P., as alleged in M.'s petition, and alleging that at that time P. had the possession of the property, and that the demurrers were not made for delay, *held,* that J. and B. have made

a sufficient showing to entitle them to be allowed to file answers setting up such defenses as they may have. And further, *held*, that generally where a grantee obtains a deed of land by fraud and imposition upon the grantor, and without consideration, and takes possession of the land under the deed, and afterward conveys the land to a *bona fide* purchaser for a valuable consideration, without notice of the fraud, such purchaser obtains a valid title as against the first grantor; and this upon the general principle of law that wherever one of two innocent persons must suffer loss on account of the wrongful acts of a third, he who has enabled the third person to occasion the loss must be the person who shall suffer.

### Error from Cowley District Court.

At the May Term, 1880, of the district court, *McNeil*, as plaintiff, recovered a judgment against defendants *Jordan* and *Buckman*, who bring the case to this court. The nature of the action, and the facts, appear in the opinion.

*Williams & Dillon*, for plaintiffs in error:

1. The demurrers raised the question squarely, whether a deed procured by fraud and misrepresentation should be annulled when the grantee under the fraudulent deed has conveyed to innocent purchasers for value. By overruling them, the court decided that a deed procured by fraud was absolutely void, and consequently, that no rights could vest under it. This unquestionably is not the law, as is evidenced by a long and almost unbroken line of decisions holding the contrary doctrine. (2 Pick. 184.)

This doctrine — that a deed obtained through fraud and deceit is only voidable, and a *bona fide* purchaser for value without notice will hold the property — is supported by innumerable authorities; among them, *Cook v. Moore*, 39 Tex. 255; *Worcester v. Eaton*, 11 Mass. 379; *Deputy v. Stapleford*, 19 Cal. 302; Kerr on Fraud and Mistake, p. 50; 3 Washb. Real Prop. 299.

2. But whether the court erred or not in overruling the demurrers, they at least raised a question of so serious and grave a nature as to render them free from the charge of being frivolous to such a degree that defendants were required to make

a showing for leave to answer. ( 2 Pick. 184; 3 Washb. Real Prop. 229.)

3. But admitting that possession would be notice as claimed, still these defendants in their sworn showing deny that plaintiff was in possession, and allege on their part that Payson, their grantor and mortgagor, was himself in possession. This fairly raised a question of fact as to who was in possession — even if in the law of the case possession cut any figure; and it was the duty of the court on that disputed fact to have allowed defendants to answer.

*Hackney & McDonald,* for defendant in error:

1. Lena McNeil never intended to execute a deed to Payson, but did intend and supposed that she was executing a deed to Martha E. McNeil. Hence the instrument to which she did affix her name, having never received the assent of her mind, was not her act, and was therefore not only voidable, but *void;* and being so, it cannot be made the basis of title. (19 How. 211, 223; 51 N. Y. 378, 383; 67 Pa. St. 380; 1 Ala. 100; 27 id. 203; 5 Cow. 506; 6 Cal. 664; 3 Harr. 73; 10 Kas. 22; 24 id. 75, 81; 4 Wis. 343, 352–3; 29 id. 194; 39 id. 290.)

2. The defendant in error was guilty of no *laches* in the premises. She employed a *lawyer* to prepare for her the conveyance which she designed executing, and had a right to rely implicitly upon his integrity. Is it, as an abstract question of law, negligence *per se,* for a *client* to rely upon the professional integrity of a *Kansas* lawyer? If not, the defendant in error is in no event chargeable with *laches.*

3. The several allegations of plaintiffs in error in regard to the occupancy of the premises by defendant in error, at the times of their respective investments, are simply that " the plaintiff, Lena McNeil, was not in the exclusive, open or notorious possession or occupancy of said premises; nor did she, at the time of the execution and delivery of said conveyance from Payson to affiant, make any claim of ownership to said premises."

Now this does not deny that she was in the possession and occupancy of the premises; it merely fences with the question, and leaves her in full and "exclusive possession and occupancy of the premises as a place of residence," except so far as such possession and occupancy may be modified and limited by the facts set forth in support of Payson's alleged possession and occupancy. This was sufficient to have put the plaintiffs in error upon inquiry as to her rights, no matter what view may be taken as to the character of Payson's occupancy. But we submit, that from the facts set forth in the affidavits, the only legitimate inference that can be drawn as to the character of his alleged possession and occupancy is, that it was the possession and occupancy of a boarder and lodger; nothing more.

The showings for leave to answer were but revised and enlarged editions of the demurrers, which were frivolous.

The opinion of the court was delivered by

VALENTINE, J.: Lena McNeil, the defendant in error, plaintiff below, alleges in her petition below that on the 26th day of January, 1880, desiring to convey property therein described as follows: Lot number eight, in block number one hundred and sixty-seven, in the city of Winfield, to one Martha E. McNeil, she went to the office of one Charles H. Payson, a lawyer, at Winfield, Kansas, and requested him to draw up a deed for that purpose. She afterward went to Payson's office, when he showed and read to her a deed drawn in accordance with her wishes. She stated that it was satisfactory, and they then went to the office of a notary public to sign and have it acknowledged. She further alleges that Payson there substituted another deed for the one previously read to her, which conveyed the property before described to himself, and she, in ignorance of the substitution, signed and acknowledged the same, and left it in the possession of Payson for record, and it was by him duly recorded in the office of the register of deeds for Cowley county, Kansas, on the following day; that on the next day Payson executed a mortgage on said property

to James Jordan to secure a loan of $480, and still later, on the 2d day of February, 1880, deeded the property to George H. Buckman for $200, Buckman assuming the mortgage; that on the 23d day of February, 1880, defendant in error discovered that the deed she had executed conveyed the property to Payson instead of to Martha E. McNeil, and immediately brought suit, filed her petition setting forth the foregoing facts, alleging actual, open and exclusive possession of the premises all the time, and asking that the deed from her to Payson, and also the deed from Payson to Buckman and the mortgage from Payson to Jordan be canceled and declared null and void. To this petition Jordan and Buckman separately demurred, on the ground that the petition did not state facts sufficient to constitute a cause of action, which demurrers were overruled by the court and held to be frivolous, and these plaintiffs in error were required to make a showing for leave to answer. Thereupon both Jordan and Buckman made sworn statements, alleging innocence of any knowledge of the fraud of Payson; that they had made careful examinations of the records before consummating their transactions with Payson; that their transactions with Payson were in good faith, and for sufficient consideration, setting forth the details thereof, denying the actual and exclusive possession of the premises by the defendant in error, Lena McNeil, as alleged by her in her petition, alleging that at the dates of the mortgage and deed from Payson, that Payson himself was in possession, and that the demurrers were not made for delay, etc. The court held this showing insufficient, refused to permit the plaintiffs in error, Jordan and Buckman, to answer, and gave judgment for the defendant in error, in accordance with the prayer of her petition. The plaintiffs in error now bring the case to this court, and assign for error the foregoing rulings of the district court.

But preliminarily, the defendant in error moves to dismiss the petition in error, on the ground that the plaintiffs in error have no joint or common interest in the controversy; and further claims in her behalf, that the plaintiffs in error

have not assigned the rendering of the judgment for error. Now they certainly have a common interest in sustaining the validity of the deed from Lena McNeil to Payson, and we think they have sufficiently assigned the rendering of the judgment for error. But even if we were to consider the petition in error as defective in these particulars, still, in a doubtful case, such as this must then be, we would allow the plaintiffs in error to amend at any time, without costs, by filing separate petitions in error, and assigning specifically and unmistakably the rendition of the judgment for error. The present petition in error says: "And the plaintiffs in error aver that there is error in said *judgment* and proceedings, in this, to wit," and the particulars supposed to render the judgment and proceedings erroneous are then set out. Other errors are also assigned. The motion to dismiss will be overruled.

We now come to the merits of the case; and from the rulings of the court below, we would think that the court below must have held that a deed procured by fraud, as the deed in this case was, is absolutely void, and that no rights can under any circumstances vest under it, or can be obtained under it, even by innocent and *bona fide* purchasers. This is certainly not the law, as is evidenced by an almost unbroken line of decisions holding the contrary doctrine.

One of the leading cases on this subject is that of *Somes v. Brewer*, 2 Pick. 184, where the court held that where a grantee obtained a deed of land by fraud and imposition upon the grantor and without consideration, and entered under the deed, and afterward conveyed the land to a *bona fide* purchaser for a valuable consideration, without notice of the fraud, such purchaser had a valid title as against the first grantor. In this case, Parker, C. J., after a careful and exhaustive review of the authorities, thus epitomizes the law: That a deed made under such circumstances (that is, in fraud of the grantor's rights) "is not a nullity, but that it is effectual to pass the estate, and that it remains valid until defeated by the grantor or those who have the right under him; so

that a conveyance from a fraudulent grantee to a third person without notice, for a valuable consideration, will vest an indefeasible title in such second purchaser. This has been the received doctrine from the earliest times, not alone in this country and England, but also in those countries which act upon the civil law as an authoritative code." (2 Pick. 196.)

This doctrine, that a deed obtained through fraud and deceit is only voidable, and that a *bona fide* purchaser, for value, without notice, will hold the property, is supported by a large number of authorities, among them *Cook v. Moore*, 39 Tex. 255; *Deputy v. Stapleford*, 19 Cal. 302; 3 Washburn on Real Property, p. 299. It is a general principle of law, that wherever one of two innocent persons must suffer loss on account of the wrongful acts of a third, he who has enabled the third person to occasion the loss must be the person who shall suffer.

As between the original parties to the deed in this case, and as to all others having notice of its fraudulent inception, we might treat the deed as absolutely void; but could we so treat it as to innocent persons who afterward purchased the property in good faith and for a sufficient consideration? We would think not; and therefore we think the court below erred in refusing to allow the defendants below to answer, setting up their said defenses.

For the purposes of this case we shall assume that the petition of the plaintiff below was sufficient, and yet we do not think that the demurrers thereto were absolutely frivolous; certainly not so absolutely frivolous that the defendants forfeited all their rights in the case by filing them. The petition alleges that the plaintiff was in the actual, open and exclusive possession of the property in controversy at the time that the mortgage from Payson to Jordan and the deed from Payson to Buckman were executed; but, the plaintiff being the grantor of Payson, it may be questioned whether her possession was notice to Jordan and Buckman that she held adversely to Payson; and if she did not hold adversely to him, what was there to prevent Jordan and Buckman from

procuring rights in the property by the deed and mortgage executed by Payson to them respectively?

For the purposes of this case, we shall also assume that the plaintiff's possession was notice to Jordan and Buckman of her rights; but whether it was or not, is certainly questionable, and being questionable, the demurrers were certainly not frivolous for raising the question. A demurrer is never frivolous when it raises a question upon which different minds may reach different conclusions.

But passing this question, and coming to the defendants' proposed defenses, we find that they deny that the plaintiff, Lena McNeil, had the possession of the property, as she alleges she had in her petition. They in fact claim that Payson had the possession of the property, and propose to prove it. We are satisfied that we are not now in possession of the real facts concerning the possession of the property, and hence we shall say nothing further with regard to possession. Indeed, we imagine that the whole case, with all its various questions concerning possession, innocence, *bona fides*, etc., may turn out, when the true facts are ascertained by a trial, to be a very different case from the one now presented to this court; and hence we do not now wish to enter into an elaborate discussion of any of the questions which may seem to be involved in the case, nor into any discussion further than has already been presented. We hold that the demurrers were not frivolous, and that the defendants below made a sufficient showing to entitle them to file answers setting up their proposed defenses; and therefore the judgment of the court below will be reversed, and the cause remanded with the order that the defendants be permitted to answer.

All the Justices concurring.