## JOHN B. LAWRENCE *et al.* v. THE GUARANTY INVESTMENT COMPANY.

1. MORTGAGE — *Notice of Legal Title — Fraud.* Where an owner of land negligently allows the legal title to go to another, and clothes him with apparent power to convey and incumber the same, and such person mortgages it as security for a loan to one who takes the mortgage in good faith and without notice of the fraud, the mortgage will be held valid and in force as against the original grantor.

2. ———— *Equitable Rule.* The equitable rule that, where one of two innocent persons must suffer by the fraud of a third person, he who trusted the third person and placed the means in his hands to commit the wrong must bear the loss, is *held* to be applicable to the facts of the decided case; and it is further *held*, that there is sufficient testimony to sustain the finding and judgment of the court.

*Error from Atchison District Court.*

ACTION by plaintiffs to cancel and set aside certain conveyances the execution of which was alleged to have been obtained through fraud and deceit practiced upon plaintiffs. At a trial without a jury, the following conclusions of fact and of law were made and returned.

"CONCLUSIONS OF FACT.

"1. The plaintiffs, John B. Lawrence and Betsey B. Lawrence, are Kickapoo Indians, both ignorant, uneducated, cannot read or write, nor understand the English language only as it is communicated to them through an interpreter. The defendant Joshua Saunders is a white man, who for a long time prior to the controversy herein, was loafing around and stopping with the Indians, without any means of support whatever. The defendant Josie Saunders was his niece, who resided in the state of Texas, but during the latter part of the year 1886, and the first part of the year 1887, was visiting relatives in Buchanan county, Missouri, occasionally being in the city of Atchison, and was so visiting in Buchanan county, Missouri, at the time the controversy herein arose. The defendant A. F. Groves was an attorney at law, and in the month of December, 1886, was practicing law in Atchison county, Kansas. The defendant the Guaranty Investment Company is a corporation for the purpose of loaning money, and its principal place of business is at the city of Atchison, Kas.

"2. For some 30 or 40 years prior to the 24th day of December, 1886, John B. Lawrence and Betsey B. Lawrence had been cohabiting and living together as man and wife in the state of Kansas, and eight children were born as the result of that union, three of whom are at home, the other children having married, and are settled and living in and near the plaintiffs and other parts of the country. No marriage ceremony was ever performed by any person at the time they commenced living together, but Betsey B. Lawrence, whose squaw name was Betsey Batese, was living with her uncle Cosamosa; her mother being dead, her uncle Cosamosa gave her to John B. Lawrence, according to the custom of the Kickapoo tribe of Indians, since which time they have lived and cohabited together as husband and wife.

"3. For more than 10 years last past, the plaintiffs, in the relation of husband and wife, have occupied the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter and the southeast quarter of the southeast quarter of section five (5), township number five (5), range number seventeen (17), in Atchison county, Kansas, being one hundred and twenty (120) acres of land, more or less, lying contiguous and constituting in fact one body of land, and during all such time have used and occupied the same as

an improved farm, except about 7½ acres in the northeast corner of the said southeast quarter of the northeast quarter, which for some years last past has been and still is occupied by L. H. Duff, under a parol agreement with the plaintiffs, and for which he was to pay the sum of $264, which said 7½ acres, used by said L. H. Duff, is for the greater part under fence, and a slaughterhouse built thereon.

"4. Of the 120 acres above described, the legal title to the said southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of said section five (5) has been in John B. Lawrence, to whom the same was patented, he, the said John B. Lawrence, having before that time become a naturalized citizen of the United States, being in all 80 acres. And the right to the southeast quarter of the southeast quarter has been in Betsey B. Lawrence, as allottee thereof, under provisions therefor of the treaty of the United States with the Kickapoo Indians—in all 40 acres.

"5. The house in which the plaintiffs resided was situated upon the 40-acre tract belonging to Betsey B. Lawrence, all of which said tract was under fence, together with about 30 acres of the 80-acre tract belonging to John B. Lawrence, and which was situated immediately north and adjoining and contiguous to the 40-acre tract.

"6. On the 28th day of January, 1886, the plaintiffs, being indebted to one Jesse N. Roach in the sum of $552, drawing 12 per cent. interest, made and delivered to said Jesse N. Roach a mortgage on the 80 acres of land belonging to John B. Lawrence, as hereinbefore described, and which said mortgage, on the 24th day of December, 1886, was a valid, subsisting mortgage on said 80 acres.

"7. On the 1st day of December, 1886, the plaintiffs' dwelling house, situated on the 40-acre tract belonging to Betsey B. Lawrence, was burned; and from that time until about the month of April, 1887, the plaintiffs lived with their daughter, Mrs. Joseph Greemore, at her house, on an adjoining piece of land, in said county. During the time they lived there, they went backward and forward to their farm to attend in and upon the feeding of stock and taking care of the same.

"8. While the plaintiffs were so temporarily staying at Mrs. Joseph Greemore's, and, to wit, on the 24th day of December, 1886, the defendants Joshua Saunders and A. F. Groves, taking with them one Joseph Wamego, an Indian

and an interpreter, went to the house of Joseph Greemore, and by misrepresentation, and in fraud of the rights of the plaintiffs, knowing that said plaintiffs were indebted to Jesse N. Roach, made representations to them that they could let them have the money at a less rate of interest, to wit, 10 per cent., to pay off the Roach mortgage; that the defendant A. F. Groves took from his pocket a paper which was there represented to be a mortgage for about the amount of the Roach mortgage, which at that time was said to be $600, and that unless said Roach mortgage was paid off, he, the said Roach, would foreclose the same and take their land from them; that, relying upon the representations so made to them by said defendants Joshua Saunders and A. F. Groves, they there signed said paper, supposing it to be a mortgage, and as it had been so represented to them by the defendants Joshua Saunders and A. F. Groves, through the interpreter, Joseph Wamego; that after they signed said paper, the said Joshua Saunders and J. C. Wamego signed the same as witnesses; that after said paper was executed, the said defendants Joshua Saunders and A. F. Groves took the same away with them; and that instead of said paper being a mortgage, as it had been so represented, it was in fact a warranty deed to the defendant Josie Saunders for all said 120 acres, and was afterward, on the 27th day of December, 1886, filed in the office of the register of deeds of Atchison county, Kansas, and is recorded therein. The original deed was not produced on the trial of this case. The acknowledgment of the grantors of said deed was taken by and before defendant A. F. Groves, a notary public.

"9. Afterward, on the 28th day of December, 1886, Josie Saunders made application for a loan of $1,200 to the defendant the Guaranty Investment Company, upon one of their blank forms of said application, the blanks of which were all filled up in the handwriting of A. F. Groves, and Josie Saunders signed and made affidavit to the truth of the same before A. F. Groves, notary public, and upon producing to the Guaranty Investment Company an abstract of the title to said property described in said application for a loan, and being the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of section number five (5), township number five (5), range number seventeen (17), Atchison county, Kansas, and being the 80 acres formerly in the name of the plaintiff John B. Lawrence. And thereupon

the defendant the Guaranty Investment Company, without any knowledge whatever of the facts and circumstances as to how the title had become vested in said Josie Saunders, otherwise than as the abstract and records show, and being satisfied from the abstract of title, and the report of the appraisers as to the value of the property, in pursuance of their rules and regulations, they let the said Josie Saunders have the sum of $1,200, for which, on the 28th day of December, 1886, she made and delivered a first-mortgage bond, with interest coupons thereto attached, for the sum of $1,200, and a mortgage securing the same upon the 80 acres of land described in her application for a loan, and also on the same day, to wit, December 28, 1886, she executed and delivered a promissory note for $50, payable to the Guaranty Investment Company, which said note was also secured by mortgage on the same premises; both of which said mortgages were afterwards filed for record of the 31st day of December, 1886, in the office of the register of deeds of Atchison county, Kansas, and were duly recorded therein. And thereupon, on the 8th day of January, 1887, the Guaranty Investment Company paid to Jesse N. Roach the sum of $618, being the amount of the note and interest of John B. Lawrence and Betsey B. Lawrence held by him; and the said note and mortgage securing the same was delivered up and canceled and the mortgage discharged of record. The balance of said $1,200, with the exception of $6.50 paid for certificates of liens, recording mortgages, etc., was paid by the Guaranty Investment Company to A. F. Groves, attorney for Josie Saunders.

"10. After the deed of John B. Lawrence and Betsey B. Lawrence to Josie Saunders, obtained in the manner hereinbefore found, and after the same had been filed of record, and on, to wit, the 28th day of December, 1886, Josie Saunders executed and acknowledged before the same A. F. Graves, a notary public, a general power of attorney to Joshua Saunders, thereby granting to Joshua Saunders, as her attorney in fact, the right to convey all real estate in Atchison county, Kas., in the name of Josie Saunders, which power of attorney was not recalled until the 3d day of May, 1887, when the same was filed for record in the office of register of deeds of Atchison county, Kansas, and recorded therein. In pursuance of said power of attorney, said Joshua Saunders, on the 19th day of April, 1887, in consideration of the sum of $3,500 named therein, made a general warranty deed in the name of

Josie Saunders, by Joshua Saunders, her attorney in fact, to the defendant Fred. W. Fleming, thereby conveying to him the southeast quarter of the northeast quarter and east half of southeast quarter of section five (5), township five (5), range seventeen (17), Atchison county, Kansas, and being the same land which was conveyed to Josie Saunders by the plaintiffs John B. Lawrence and Betsey B. Lawrence, through the misrepresentations of the defendants Joshua Saunders and A. F. Groves, on the 24th day of December, 1886, at the house of Joseph Greemore, in Atchison county, Kansas, which said warranty deed was acknowledged by and before Charles L. Botsford, a notary public in and for Atchison county, Kansas, on the 19th day of April, 1887; and thereupon, on said 19th day of April, 1887, Fred. W. Fleming executed back to the said Josie Saunders a mortgage upon the same property conveyed to him by Joshua Saunders, attorney in fact for Josie Saunders, purporting to secure a promissory note of the same date, for the sum of $2,150, payable five years after date, with interest at 6 per cent., payable annually, and signed 'Fred. W. Fleming;' which said mortgage was given subject to a prior mortgage of $1,250, as stipulated therein, and which said mortgage was acknowledged by said Fred. W. Fleming before Lewis R. Irwin, a notary public within and for the county of Jackson and state of Missouri.

"11. The first-mortgage bond executed by Josie Saunders to the Guaranty Investment Company, as well as the interest coupons thereto attached, and the mortgage securing the same, all bear date upon their face as of the 1st day of December, 1886, but they were executed by Josie Saunders on the 28th day of December, 1886."

"CONCLUSIONS OF LAW.

"1. Each and all of said instruments so of record, as hereinbefore described in the several conclusions of fact, are without consideration, and are null and void, and should be set aside, except the said two mortgages to the Guaranty Investment Company, which are valid, and the 80 acres, with the exception of $7\frac{1}{2}$ acres in the northeast corner thereof, in the name of the plaintiff John B. Lawrence, should be subjected to their payment, with the accruing interest.

"2. The $7\frac{1}{2}$ acres of land, together with the improvements thereon, in the northeast corner of said 80 acres, sold to L. B. Duff, under parol agreement, upon his payment of the price thereof, to wit, the sum of $264, should be conveyed to him

by the plaintiffs free and unincumbered by the lien of the two mortgages of the Guaranty Investment Company herein.

"3. That the plaintiffs pay the cost of this proceeding."

Motions were made by plaintiffs for judgment on the findings, and also for a new trial, which were overruled by the court, and judgment entered in favor of the Guaranty Investment Company in accordance with the conclusions stated by the court. Plaintiffs bring the case here for review.

*Seneca Heath*, and *W. W. & W. F. Guthrie*, for plaintiffs in error:

Saunders' deed void, not voidable: The findings of fact seem to indicate that the trial court was of the opinion that the Indian plaintiffs in fact signed the very written instrument which was produced and read, and explained to them as a mortgage, and thereon that the procurement of such signature by fraud could not be set up against the Guaranty Investment Company, held by the court to be an innocent purchaser for value. This error of the trial court arose from a failure to distinguish between the different kinds of fraud. It is true that fraud in the procurement of a conveyance cannot be set up against an innocent purchaser; but it is only true as to fraud entering into the purposes and inducements of the conveyance — of that fraud which makes a transaction voidable. The rule is not true of that fraud which makes a transaction absolutely void.

The distinction is clear. The fraud might have been such as to render the transaction only voidable, or it might have been such as to have rendered it void. In one case, there is an act which may be rescinded until the rights of third parties have intervened; in the other case, it is no act at all Bigelow, Fraud, pp. 258, 617.

The Saunders deed a forgery: We do not believe that there is a scintilla of evidence, consistent with a finding of fraud of any sort, upon which to find that the deed, a copy of the record of which was produced, was the instrument produced by Groves and explained by Wamego.

The Guaranty Investment Company not an innocent party:
Groves was an agent of the Guaranty Investment Company,
and, under the pleadings and the proof, the company was
bound by the knowledge of the fraud possessed by him.

Groves an agent under the pleadings: In the sixth clause
of plaintiffs' petition, plaintiffs allege that the Guaranty In-
vestment Company acted "through the agency of defendant
Groves." This is not denied under oath, and must be taken
as true.

Groves an agent under the proof: The evidence cited be-
low is exclusively that of officers of the investment company,
and is undisputed.

Possession; notice: There was such possession in respect
to the premises as to put the investment company on inquiry
at the time it took its mortgage. Duff's possession was suffi-
cient to put the company upon inquiry as to the rights of
Lawrence as well as Duff in the $7\frac{1}{2}$ acres. The possession
of one holding under another is sufficient to give notice of
the rights of both. Devl., Deeds, §§ 775, 776.

*Waggener, Martin & Orr*, for defendant in error:

Counsel for plaintiffs now assume, contrary to their own
pleadings, that the question tried in the district court was,
whether or not the deed dated December 24, 1886, and re-
corded December 27, 1886, was a forgery; yet no such ques-
tion was tried; indeed, no such question could be tried under
the pleadings, for there was no such issue. On this false as-
sumption the plaintiffs build their argument. We shall not
attempt to follow this will-o'-the-wisp, the creation of the
fancy of learned counsel.

As to these two Guaranty Investment Company mortgages,
was conclusion of law one properly deduced from the conclu-
sions of fact? We think this question must be answered
affirmatively, upon the authority of *Jordan v. McNeil*, 25 Kas.
459, and *McNeil v. Jordan*, 28 id. 7. See note to this case
in Dassler's edition of 28 Kas.

The principles announced in these cases were further ex-

plained, enforced, and applied to a fraudulent deed and a mortgage founded thereon, in *The State v. Matthews*, 44 Kas. 596–605.

That A. F. Groves was the agent and attorney of Josie Saunders, there can be no doubt. The investment company knew nothing of her personally; she was a stranger to all its officers; they never saw her. But she held the perfect record title to the 80-acre tract, and she made a written application for a loan upon it, through A. F. Groves, acting as her agent and attorney, she signing and verifying the application herself. If A. F. Groves was the agent of the investment company for any purpose, it was after the application was made, and then only to examine the land and to report upon its sufficiency as security for the amount of the loan. But he was not the agent of the investment company in any respect as to the acquirement of the title by Josie Saunders.

Notice to an agent, to be notice to the principal, must be of some matter connected with the business in which the agent is engaged for the principal. *Roach v. Karr*, 18 Kas. 529.

The opinion of the court was delivered by

JOHNSTON, J.: The findings and judgment of the court leave but little for our determination. Those findings which are challenged are based upon conflicting evidence, and are therefore conclusive on this court. Through the misrepresentation and fraud of third parties, the plaintiffs placed the apparent title in Josie Saunders, who put their deed — valid upon its face — upon record, and subsequently incumbered it with a mortgage. They parted with the legal title, believing the instrument which they had signed was a mortgage; and while they were grossly deceived, they clothed the grantee with the apparent ownership and power of disposition of the land. On the apparent validity of this title, and in good faith, as the findings show, the investment company loaned its money on a mortgage made by the fraudulent grantee. The prior incumbrance, amounting to more than $600, which plaintiffs had given upon the land, was paid by the investment company

before the Saunders mortgages were accepted by it.    The difference between the loan which was discharged and that made by the investment company, which is a little over $600, is the plaintiff's loss if the judgment is sustained.    Who was most to blame, and who should bear the loss?    The plaintiffs' action in negligently allowing the legal title to go to another, with the apparent power to convey and mortgage the land, has been the means by which the investment company was deceived.    By their conveyance, the grantee was held out to the world as the owner of the land, and innocent persons were thereby invited to deal with her as such owner.    The

2. Equitable rule. rule in equity which controls is, that where one of two innocent persons must suffer by the fraud of a third person, he who trusted the third person and placed the means in his hands to commit the wrong must bear the loss.    (*Jordan v. McNeil*, 25 Kas. 459.)    In that case it was held that a conveyance obtained through fraud and deceit is not a nullity, but that a conveyance from the fraudulent grantee to a third person who purchased the property in good faith and for a consideration will be held valid as against the first grantor.    In *McNeil v. Jordan*, 28 Kas. 7, this same doctrine was reaffirmed, and it was held that the grantor of the fraudulent deed must suffer loss rather than an innocent purchaser or some one who in good faith had obtained a mortgage from the fraudulent grantee.    The same subject received consideration in *The State v. Matthews*, 44 Kas. 596, where it was said that

"Upon this same principle, it is almost universally held, that whenever an instrument is procured from one person by the fraud or villainy of another, even if such fraud or villainy should amount to a criminal offense, if all the rights which the instrument apparently gives should at that time or afterwards be transferred to another, who should be an innocent and *bona fide* holder for value, the innocent

1. Mortgage— notice of legal title—fraud. and *bona fide* holder could enforce the instrument against the maker, although the maker might also be an innocent person.    In such a case, the maker would be estopped from claiming that the instrument was void as against the innocent *bona fide* holder."

There is some contention that the deed in question was never in fact signed by the plaintiffs, but that it was a forgery, and therefore absolutely void, and ineffectual to convey title under any circumstances. The record, however, does not sustain the claim. In the plaintiffs' petition, it appears to be conceded that the instrument obtained for and placed on record by Josie Saunders was the deed executed by the plaintiffs, and it is alleged that it was obtained from them through fraud and deceit. More than that, there is sufficient testimony in the record to sustain the finding made by the court that the deed was actually signed by them, and that it was obtained through a violation of their confidence and by the deception and fraud of Saunders and Groves.

It is further contended, that the investment company cannot be held to have been without knowledge or notice of the fraud practiced upon the plaintiffs. The claim is, that Groves was an agent of the company in procuring the loan, and that he having knowledge of the transaction and of the means by which the title was obtained, the company should be bound to have knowledge of the same facts. It is said that he must be held to be an agent, under the admissions of the pleadings. The petition, after alleging the manner in which the deed was obtained, sets forth the execution of the mortgage to the Guaranty Investment Company, and then avers that "the Guaranty Investment Company acted upon the information, advice, and, in fact, through the agency of said defendant A. F. Groves, and by collusion therewith." The company denies this averment, but there is no verification of the answer, and it is therefore said that the agency is admitted. There is no averment of an appointment of Groves by the company, nor that it had conferred any authority upon him. It is not such an averment of appointment or authority as requires a verified denial. Neither can we hold, under the testimony and findings, that Groves was the agent of the company in either the acquirement of the title by Josie Saunders or in any transaction by which his knowledge should be binding upon the company. There is testimony to the effect that he was

the agent and attorney of Josie Saunders throughout all the transaction. As such agent, he prepared and presented the papers upon which the loan was obtained, and these included the appraisers' and examiners' reports, such as are returned by the correspondents of the company. The company was in the habit of accepting loans presented by parties living in the city where its general offices were kept, and allowing the commission on the same to them, and that was done in this instance. The testimony, however, is direct and positive that Groves was in no way connected with the company as attorney or agent, and that it had no knowledge whatever of the means by which the title was obtained, nor had it any personal knowledge of the grantee. It simply knew that she presented a written application for a loan through her agent and attorney, and, upon an examination of the abstract, it found she had a perfect record title, and relying upon that it accepted the loan and paid out its money.

There is testimony to sustain the conclusions reached by the trial court, and, under a familiar rule, they cannot be overthrown or disturbed.

The judgment of the district court will therefore be affirmed.

ALLEN, J., concurring.

HORTON, C. J., not sitting.