No. 45,306

O. Gene Bicknell and Marie C. Bicknell, *Appellants*, v. Paul S. Jones and Ruth Aaro Jones, *Appellees*.

(453 P. 2d 127)

Opinion filed April 12, 1969.

*Douglas G. Hudson*, of Fort Scott, argued the cause, and *Douglas Hudson* and *David Mullies*, also of Fort Scott, were with him on the brief for the appellants.

*Perry Owsley*, of Pittsburg, argued the cause, and *Karl K. Grotheer* and *Wm. J. Grotheer*, also of Pittsburg, were with him on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal from an order of the trial court dismissing the first two counts in plaintiffs' three-count petition, based upon fraudulent representations made by the defendants inducing the plaintiffs to sell certain real estate. The first count

seeks *rescission,* compensatory and punitive damages; the second count seeks, in the alternative, *injunctive relief,* compensatory and punitive damages; and the third count, likewise in the alternative, seeks compensatory and punitive damages.

The issue on appeal is whether the first two counts state a claim *upon which relief can be granted,* in view of the facts and circumstances disclosed at the hearing on the motion for summary judgment.

The petition alleges that in the spring of 1967 defendant Paul S. Jones, a licensed realtor in Pittsburg, Kansas, approached the plaintiffs with a proposition whereby he would act as a real estate agent to sell certain lots owned by the plaintiffs in Pittsburg, *to an oil company to be used as a service station.* At that time Jones knew the plaintiffs had acquired the lots to erect a restaurant, but later acquired another site in the immediate area upon which the plaintiffs had erected two restaurants, which were open for business at all times material to the action. It related that the representations were made for the purpose of inducing plaintiffs to sell their lots, and that at the time Jones knew the plaintiffs would not sell their lots to anyone for the purpose of being used in competition with plaintiffs' restaurant business. The petition alleged that, induced by Jones' misrepresentation concerning the identity of the ultimate purchaser and the use to which the property was to be put, plaintiffs agreed to employ Jones as their real estate agent, entered into a written agreement with Jones, a copy of which was marked Exhibit "A" and attached to the petition; that in this agreement, Exhibit "A," Jones was named as purchaser, rather than the oil company represented to be the ultimate purchaser, at the request of Jones and upon his representation that such procedure would facilitate the transaction. Pursuant to the agreement the plaintiffs executed a warranty deed to the defendants on May 10, 1967, a copy of which was attached to the petition as Exhibit "B." After the sale and deed had been completed and within two weeks preceding the filing of this action, the plaintiffs learned for the first time that the properties were not in fact to be used by the oil company for a service station, but on the contrary, defendants were going to erect a *drive-in restaurant* on the premises.

The plaintiffs further alleged that the erection of such a restaurant by the defendants at this location would be in competition with their own restaurant business located in and near the same

area, and would substantially damage the plaintiffs' operations. It alleged the defendant Paul S. Jones charged to and collected from the plaintiffs a real estate commission of $1,800.

The petition alleged the representations made by Jones, concerning the identity of his alleged client and the use to which the premises were to be put were material representations, were made for the purpose of inducing the sale; that they did in fact induce the sale and execution of the deed; that the representations were false; that Jones knew they were false; and that the plaintiffs would not have executed the agreement and deed except for such false and fraudulent representations.

It alleged the two lots at the time of sale were occupied by two residences, which the defendants had since razed, and that each of these residences was worth the sum of $10,000.

The petition stated that in the future the plaintiffs' restaurant would suffer irreparable, continuing and substantial damages if the defendants were permitted to complete the erection of the proposed restaurant and operate it in competition with the business of the plaintiffs, and the plaintiffs have no adequate remedy at law. Count I of the petition prayed for rescission of the contract, for return of the commission wrongfully collected in the sum of $1,800, for $20,000 damages by reason of the destruction of the residences formerly located on the properties, and for punitive damages in the sum of $50,000.

Count II incorporated the foregoing allegations, and in the alternative prayed for a decree perpetually enjoining the defendants from constructing or operating the proposed restaurant, for compensatory damages in the sum of $10,000, and for punitive damages in the sum of $50,000.

Count III incorporated the allegations of Count I, and in the alternative prayed for $50,000 compensatory damages and $50,000 punitive damages.

Under the terms of the agreement between the plaintiffs and defendant Paul S. Jones, the purchase price of the lots was $31,800, of which $23,068.43 was represented by a mortgage to First Federal Savings and Loan of Parsons, which was assumed by the defendants.

The defendants filed a motion to dismiss Counts I and II of the petition for failure to state a claim upon which relief can be granted. This motion alleged that after the completion of the sale between

the parties, the defendants mortgaged the property to the National Bank of Pittsburg for $75,000 and executed a lease of the premises to Burger Chef Systems, Inc., both of whom are said to have had no knowledge of the facts alleged in the plaintiffs' petition and that they were innocent purchasers of interests in the property and entitled to protection under the law. The motion also alleged the defendants have made substantial alterations in the property, including removal of improvements, grading of the land, and construction of driveways and sidewalks; and that it would be impossible for the parties to be restored to the position they each were in at the time of the execution of the deed.

The defendants state the relief prayed for affirms and disaffirms the contract and deed, and since the plaintiffs at sometime during this proceeding will be required to elect between these remedies, they should be required to do so at this time in view of the rules of law preventing the remedies sought in the first and second counts of the petition. Defendants further claim the plaintiffs have an adequate remedy at law for damages and such remedy is more suitable and more likely to result in justice to the parties.

A copy of the mortgage to the National Bank of Pittsburg in the sum of $75,000, dated August 30, 1967, and a copy of the land and building lease to Burger Chef Systems, Inc., dated August 22, 1967, were attached to the motion. This was a lease for fifteen years to commence when the improvements shall be fully completed, and the improvements were to be completed on or before February 1, 1968. The lease also contained an option for an additional five-year term. The agreed rental was $11,000 annually.

Another exhibit attached to the motion reflected that Cobb Brothers Construction Company had entered into a proposal to erect the restaurant for the defendants for the sum of $50,000, to be completed by February 1, 1968. The contractor would have no responsibility for any delay for causes beyond his control.

Defendant Paul S. Jones also attached an affidavit to the motion relating that he bought the property from the plaintiffs and paid off the mortgage to First Federal Savings and Loan; that he bought the property for a drive-in restaurant and also had to purchase an adjoining property for $25,000; that he had executed the mortgage to the National Bank of Pittsburg for $75,000 on the three lots, and had paid out of the proceeds of that mortgage the sum of $22,494.57

to First Federal; that he had made three payments on the mortgage before it was liquidated aggregating $741; that he had entered into the lease with Burger Chef Systems, Inc.; that he had entered into the contract with Cobb Brothers Construction Company of Pittsburg; that after the suit was filed the National Bank of Pittsburg stopped its financing until the issues in Counts I and II were resolved; that construction had been thereupon halted by the defendants; and that defendants had expended to date the sum of $56,013.83, which did not include defendants' obligation to Cobb Brothers Construction Company, itemized in Exhibit No. 4, attached.

In the original petition filed by the plaintiffs, there was no offer of restitution or of restoration of status quo. On the 13th day of October, 1967, at the hearing on the motion after the defendants' evidence was presented, the plaintiffs upon leave of the court filed an amendment to the petition as follows:

"Plaintiffs amend Count I of the petition by offering to refund to the defendants the amount paid by them to the plaintiffs. Plaintiffs, however, reassert their right to collect from defendants the sum of $1,800.00 wrongfully collected as commission, the sum of $20,000.00 for destruction of the residences formerly located on the said properties, and to punitive damages in the sum of $50,000.00."

At the hearing it was stipulated by plantiffs' counsel "that The National Bank of Pittsburg, Kansas, at the time of the hearing held a valid and subsisting mortgage of record on the real estate in question in the sum of $75,000.00, and that the lease between the defendants and Burger Chef Systems, Inc. was a valid and subsisting lease at the time of the hearing."

At the hearing the defendants introduced the mortgage, the lease, the construction contract, and Exhibit No. 4 itemizing the expenditures made by the defendants to the date of hearing, all of which were admitted in evidence. Also admitted in evidence at the hearing were the affidavit of Paul S. Jones and the oral testimony of Rex W. Crowley, president of the National Bank of Pittsburg, Bucky Walters, area representative for Burger Chef Systems, Inc., and Wesley Cobb of Cobb Brothers Construction Company. The plaintiffs presented no evidence and filed no counter affidavit, but agreed and presented the law applicable in support of their contention that the court should deny the defendants' motion.

Based upon the pleadings, the motion and the foregoing evidence,

the trial court after hearing the matter sustained the motion to dismiss Counts I and II.

Appeal has been duly perfected from that judgment.

The appellants (plaintiffs below) complain that the appellees' motion to dismiss was sustained by the district court without having heard any testimony whatever in support of the appellants' contentions, by discovery or otherwise. They rely upon the proposition that a summary judgment proceeding is not a trial by affidavits, and the parties must always be afforded a trial when there is a good faith dispute over the facts, citing K. S. A. 60-256 (c); *Herl v. State Bank of Parsons*, 195 Kan. 35, 37, 403 P. 2d 110; *Brick v. City of Wichita*, 195 Kan. 206, 210, 403 P. 2d 964; and *Secrist v. Turley*, 196 Kan. 572, 575, 576, 412 P. 2d 976.

The appellants concede, however, they are in no position to make any strenuous complaint concerning the introduction of oral testimony at the hearing on the appellees' motion to dismiss because they "made no objection to the introduction of such testimony, and, in fact, were interested to know what the witnesses would have to say on the subject."

The appellants concede "In effect what the court did was to treat the motion to dismiss as a motion for summary judgment, as it had the power to do under K. S. A. 60-212 (b)."

Under these circumstances where the appellants introduced no evidence at the hearing on the defendants' motion, and do not object to the motion being heard at the time it is set, they cannot later object because they had no time for discovery, having failed to request such right of discovery at the time the matter was before the trial court.

The facts alleged in the appellants' petition are conceded for the purpose of the appellees' motion. There is no dispute over the facts alleged in the pleadings. Likewise, as the record stands, there is no dispute over the facts admitted on the appellees' motion.

In other words, the appellees concede the plaintiffs have stated a cause of action in all three counts of their petition on the issue of fraud, but this is not the question submitted to the court by the appellees' motion—that issue is whether or not Counts I and II of the petition state a claim upon which relief can be granted in favor of the appellees under the facts and circumstances disclosed at the hearing on the motion.

Briefly stated, the appellees disclosed by their evidence at the hearing on the motion that innocent parties, namely the National Bank of Pittsburg and Burger Chef Systems, Inc., had acquired interests in the property, without knowledge of the facts alleged in the appellants' petition, as innocent purchasers.

The appellees' evidence also disclosed they had made such substantial and material changes in the property that it would be impossible for the parties to be restored to the position that each was in at the time of the execution of the deed.

Briefly stated, the appellants' position is that they have stated a cause of action in three counts alleging fraud by reason of misrepresentation made by the appellee Paul S. Jones, as a real estate agent employed by the appellants and for which he collected a real estate commission for the sale to himself in the sum of $1,800; that he misrepresented to the appellants the ultimate purchaser was an oil company who would use the premises for a service station, whereas in fact the appellees were purchasing the lots for themselves for the purpose of constructing a restaurant in the same area as the appellants' restaurants to compete with the appellants in the restaurant business. (Citing 2 A. L. R. 2d 1119; and *Merchant v. Foreman*, 182 Kan. 550, 322 P. 2d 740.)

The appellants also rely upon K. S. A. 60-218 for the proposition that they may join in their petition as independent or as alternative claims as many claims, either legal, equitable or both, as they may have against an opposing party. (Citing, *Chappell & Co. v. Palermo Cafe Co.*, 249 F. 2d 77 [1st Cir. 1957]; and *Blazer v. Black*, 196 F. 2d 139 [10th Cir. 1952].)

While the appellants concede that after the sale and before the suit was brought, the appellees had mortgaged the property, executed the lease, had razed the two residential properties, and had through a contractor started erection of their restaurant, they nevertheless contend "all of these changes in position were by the wrongdoer and not by what, for the purpose of the motion to dismiss, must be considered as the innocent victim."

They contend the evidence will disclose that the wrongdoer can repay the mortgagee, can pay whatever the contractor has coming to him, and that the lessee would be in no worse position than it was before, because its lease would not commence until completion of the building, so that the lessee would owe nothing, just as it was situated at the time of the lawsuit.

The appellants rely upon *Laun v. Kipp*, 155 Wis. 347, 145 N. W. 183, 5 A. L. R. 655, for the proposition that equity is not powerless, quoting from the opinion as follows:

"There is no written law placing a limit upon the power of equity to remedy and redress wrongs, neither is there any want of power in that regard in the written law. It is the crowning merit of our system that, so far as power is concerned, it is as limitless as the capacity of man to wrong a fellow man. Courts may well proceed with great care in exercising their supreme authority outside of the field of ordinary judicial activity, but should never doubt or suggest want of power to deal with any situation where otherwise one person would be seriously injured by another in his person or property. The judicial arm of the people stands for its whole sovereign authority in that field, and so, in the very nature of things, must, in the final analysis, be limited only by the boundaries of justice and be taken as infallible as regards what is just under all the circumstances of any particular situation. . . ." (p. 367.)

Kansas cases to like effect cited are *Stady v. The Texas Company*, 150 Kan. 420, 94 P. 2d 322; and *Strait v. Fuller*, 184 Kan. 120, 334 P. 2d 385.

The primary concern of the appellants appears to be that they will have difficulty proving damages in the event the action taken by the trial court dismissing their first two counts is sustained. They argue: "At the time the suit was filed plaintiffs' restaurant was no more than two vacant lots and a part of a sidewalk. The evidence will also be that the plaintiffs' own restaurant businesses had not been long in operation. It will, therefore, be most difficult to establish precisely how much in dollars and cents plaintiffs will be damaged by loss of business and profit as a result of plaintiffs' [defendants'] drive-in which had not been constructed. In other words, there is no experience by which to measure with any precision the loss of profit which will be suffered by the plaintiffs. We only know that it will be substantial."

We fail to see merit in the appellants' position.

The facts are undisputed that the appellees executed a mortgage to the National Bank of Pittsburg in the sum of $75,000 covering the property which is the subject matter of this action and other property acquired by the appellees adjacent thereto. The bank, at the time of the execution of the mortgage, had no knowledge of the facts alleged by the appellants. By reason thereof it enjoys the status of an innocent purchaser. The lien of this mortgage cannot, therefore, be defeated by any judgment of this court in the instant case. The bank is entitled to protection as an innocent purchaser, regardless of the outcome of this lawsuit.

Burger Chef Systems, Inc. acquired a lease on this property for a term of fifteen years with an option for an additional five years at an agreed rental. This lease was acquired without any knowledge of the facts alleged by the appellants, and Burger Chef enjoys the status of an innocent purchaser. It is entitled to the interest acquired in this property by its lease. Burger Chef is an innocent purchaser for value and regardless of the outcome of this lawsuit, it: should be protected in its right to use this property for the term of its lease.

The foregoing conclusions as to the interests of the bank and Burger Chef are the result of a rule in equity overriding the rule asserted by the appellants. It provides that where one of two innocent persons must suffer by the fraud of another, he who trusted the third person and placed the means in his hands to commit the wrong must bear the loss. At this point in the proceedings in the instant case, the bank and Burger Chef are innocent persons. The appellants are the persons who trusted the wrongdoer (Jones) and placed the means in his (Jones') hands to commit the wrong. Therefore, the appellants must bear the loss.

The rule is well stated in *Jordan v. McNeil,* 25 Kan. 459. There the court reviewed *Somes v. Brewer,* 2 Pick. 184, wherein a grantee obtained a deed of land by fraud and imposition upon the grantor and without consideration. Later the grantee conveyed the land to a bona fide purchaser for a valuable consideration without notice of the fraud, and it was held the purchaser had a valid title as against the first grantor, saying:

". . . In this case, Parker, C. J., after a careful and exhaustive review of the authorities, thus epitomizes the law: That a deed made under such circumstances (that is, in fraud of the grantor's rights) 'is not a nullity, but that it is effectual to pass the estate, and that it remains valid until defeated by the grantor or those who have the right under him; so that a conveyance from a fraudulent grantee to a third person without notice, for a valuable consideration, will vest an indefeasible title in such second purchaser. This has been the received doctrine from the earliest times, not alone in this country and England, but also in those countries which act upon the civil law as an authoritative code.' ( 2 Pick. 196.)

"This doctrine, that a deed obtained through fraud and deceit is only voidable, and that a *bona fide* purchaser, for value, without notice, will hold the property, is supported by a large number of authorities, among them *Cook v. Moore,* 39 Tex. 255; *Deputy v. Stapleford,* 19 Cal. 302; 3 Washburn on Real Property, p. 299. It is a general principle of law, that wherever one of two innocent persons must suffer loss on account of the wrongful acts of a third,

he who has enabled the third person to occasion the loss must be the person who shall suffer." (pp. 464, 465.)

The rule was restated and applied to a mortgage situation in *Lawrence v. Investment Co.*, 51 Kan. 222, 32 Pac. 816, in the following language:

". . . By their conveyance, the grantee was held out to the world as the owner of the land, and innocent persons were thereby invited to deal with her as such owner. The rule in equity which controls is, that where one of two innocent persons must suffer by the fraud of a third person, he who trusted the third person and placed the means in his hands to commit the wrong must bear the loss. (*Jordan v. McNeil*, 25 Kas. 459.) In that case it was held that a conveyance obtained through fraud and deceit is not a nullity, but that a conveyance from the fraudulent grantee to a third person who purchased the property in good faith and for a consideration will be held valid as against the first grantor. In *McNeil v. Jordan*, 28 Kas. 7, this same doctrine was reaffirmed, and it was held that the grantor of the fraudulent deed must suffer loss rather than an innocent purchaser or some one who in good faith had obtained a mortgage from the fraudulent grantee. . . ." (p. 231.)

The foregoing rule is in effect reiterated but stated differently in *West v. Lumber Co.*, 56 Kan. 287, 43 Pac. 239. There the plaintiff was induced by fraud to convey title to a tract of real estate to the defendant, and the plaintiff brought an action to set aside the conveyance and discharge the property from all liens of third parties, who had relied upon the apparent title of the fraudulent purchaser and had furnished materials and labor in the construction of buildings on the property. The court said: "The plaintiff saw fit to invest Parker with the legal title to the lots. . . . By his own act he had given Parker the full title to the property, and the persons constructing the buildings contemplated by the bargain itself made between him and Parker had a right to rely on Parker's apparent title to the property." (pp. 289, 290.)

The foregoing rule controls the disposition of this case and applies to foreclose the appellants' attempt to rescind the contract and conveyance, or in the alternative, to foreclose the appellants' attempt to obtain injunctive relief. Both the National Bank of Pittsburg and Burger Chef Systems, Inc. are entitled to the benefits of their respective bargains, and the remedies sought by the appellants in Counts I and II of their petition are not available, because the facts alleged in each of such counts fail to state a claim upon which relief can be granted.

By reason thereof consideration of other infirmities asserted by the appellees regarding the appellants' attempt to rescind the conveyance to obtain restitution is immaterial. Likewise, consideration of other infirmities asserted by the appellees regarding the appellants' attempt to obtain injunctive relief is immaterial.

Accordingly, the judgment of the district court dismissing Counts I and II of the appellants' petition is correct.

The judgment of the lower court is affirmed.