No. 29,482.

JAMES H. ELLIOTT and MABEL ELLIOTT, *Appellants*, v. E. D. FAULKNER and MARY FAULKNER, His Wife, and MOLLIE DEGRAFFENREID, *Appellees*.

(292 Pac. 918.)

Opinion filed November 8, 1930.

*Spencer B. Apple,* of Baxter Springs, for the appellants.

*Charles Stephens, Clarence Rumery, Rawlins Stauffacher* and *C. B. Skidmore,* all of Columbus, for the appellees.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action seeking to have a certain warranty deed made to the appellee E. D. Faulkner decreed a mortgage, and further asking it be canceled and held for naught because the terms of the mortgage had been fully satisfied.

The petition alleged, in substance, that the plaintiffs gave the defendant Faulkner the deed to indemnify him against any loss which might be sustained by him on account of becoming a surety on an appearance bond for one of the plaintiffs (James H. Elliott), who was being held for trial in the district court of Cherokee county. It was alleged that there was a consideration of $3,000 set forth in the deed, but that at the time of the delivery of the deed to the defendant Faulkner there was a mutual agreement between the plaintiff Elliott and the defendant Faulkner to the effect that if the plaintiff should carry out the conditions of the appearance bond and should appear for trial at the time set, the defendant would reconvey the premises to the plaintiffs. It was further alleged that the plaintiff Elliott had fully complied with the conditions of the bond upon which the defendant Faulkner was his surety and that as a result the terms of the mortgage represented by the deed were fully satisfied; that under the agreement with Faulkner the property should be deeded back to the plaintiffs.

Upon the filing of the foregoing petition one Mollie DeGraffenreid intervened and alleged in her intervening petition that she had a judgment against Mabel Elliott, one of the plaintiffs; that Mabel Elliott had appealed the case in which the judgment was obtained to the supreme court of Kansas, and that the defendant Faulkner was one of the sureties on the supersedeas bond of Mabel Elliott in that case. That on the hearing in the supreme court the decision of the lower court was affirmed and the intervener also looked to

the defendant Faulkner as one of the sureties on the bond to indemnify her. She alleged further that Faulkner qualified on the supersedeas bond by reason of claiming to be the owner of the property described in plaintiffs' petition.

The answer of the defendant Faulkner alleged that at the time of the giving of the deed by the plaintiffs, the plaintiff J. H. Elliott, for and on behalf of himself and his wife, Mabel Elliott, told the defendant Faulkner that the deed was given and delivered to Faulkner not only to secure him on the appearance bond in the criminal case in which J. H. Elliott was the defendant, but also to secure Faulkner against liability or loss on other bonds which he might be called upon to sign by either of the plaintiffs. The answer further alleged that Mollie DeGraffenreid held a judgment which had been approved by the supreme court of Kansas; that the defendant Faulkner signed the supersedeas bond on the appeal as surety and was liable on that bond; and further, that the plaintiffs are estopped from claiming that the property should be held as security against loss or liability on the part of the defendant Faulkner under the supersedeas bond. Plaintiffs replied to this answer denying the allegations thereof and specifically denying that the deed was given for any purpose other than to secure the appearance of the plaintiff J. H. Elliott in the criminal case against him. Upon the issues thus joined the case was tried to the court without a jury, and upon conclusion of the trial the court made findings of fact and conclusions of law. The court found that the deed in controversy was executed and delivered by the plaintiffs Elliott and wife on September 2, 1925; that on the date the deed was executed and delivered to the defendant, the plaintiffs were residing on, and in possession of, the real estate described in the deed, and have been so residing thereon and in possession of the real estate at all times since that time.

The court also made the following findings of fact and conclusions of law:

"The court further finds that at the time of the delivery of said deed by plaintiffs to the defendant E. D. Faulkner, that it was agreed between the said parties to said deed that the same should be given to the said E. D. Faulkner to enable him to be able to qualify and so that he might become surety on the recognizance bond of the plaintiff James H. Elliott and such other bonds as he might be asked by the plaintiffs or either of them to execute as surety for said plaintiffs or either of them, and that the title to said property should be held by the said E. D. Faulkner as security and indemnity

against any loss or liability against the said E. D. Faulkner by reason of the execution by him of any of the bonds above referred to.

"The court further finds that the defendant E. D. Faulkner did sign as surety certain bonds at the request of plaintiffs and in particular did sign as surety on June 9, 1926, in case No. 13177 in the district court of Cherokee county, Kansas, sitting at Columbus, in which Mollie DeGraffenreid was plaintiff and the above-named plaintiff, Mabel Elliott, was defendant, a supersedeas bond in which plaintiff Mabel Elliott was principal and plaintiff James H. Elliott and defendant E. D. Faulkner were sureties, which case was being appealed to the supreme court of the state of Kansas; that thereafter the judgment in said case was affirmed by the supreme court of the state of Kansas and execution was issued on said judgment against said Mabel Elliott, which was thereafter returned by the sheriff of Cherokee county unsatisfied; that thereafter on October 25, 1927, the said Mollie DeGraffenreid recovered judgment in case No. 13879 in the district court of Cherokee county, Kansas, on said supersedeas bond against the said Mabel Elliott, James H. Elliott and E. D. Faulkner in the sum of $3,330.40, with 6 per cent interest thereon per annum from August 1, 1927; that there was paid on said judgment on February 28, 1929, the sum of $1,546, and that there is a balance due on this date on said judgment, including interest, the sum of $2,163.78, for which there is a liability on the part of the defendant E. D. Faulkner to pay said judgment in said amount.

"The court further finds that the warranty deed above described to said above-described real estate should be adjudged and decreed to be a mortgage conditioned to the effect that plaintiffs would save the defendant, E. D. Faulkner, harmless from any loss or liability by reason of his signing any bond or bonds of plaintiffs or either of them; that the consideration thereof was the burden and detriment placed on the defendant, E. D. Faulkner, in assuming the loss or liability to pay the amount of the bond or bonds which he might be asked by plaintiffs or either of them to sign for them or either of them; that the conditions thereof have been broken in that said defendant E. D. Faulkner has become liable to pay the sum of $2,163.78 and interest at 6 per cent per annum from this date on the judgment on the above-mentioned supersedeas bond, being case No. 13879 in the district court of Cherokee county, Kansas; and that said mortgage should be foreclosed."

Thereupon the court entered judgment decreeing the deed to be a mortgage and further adjudging that unless the plaintiffs should pay defendant the sum of $2,163.78 and interest thereon, being the amount for which the defendant Faulkner was liable on the supersedeas bond to the intervener DeGraffenreid, within ten days, then the real estate should be sold according to law and the proceeds applied to the payment of taxes, costs, the amount of the judgment of the intervener DeGraffenreid, and the balance, if any, be paid to the plaintiffs.

From this judgment the plaintiffs appeal and urge as grounds for reversal several specifications of error.

It is claimed by the appellants that the court erred in permitting Mollie DeGraffenreid to intervene in this action and in admitting testimony in support of her intervening petition.

Appellants contend the evidence shows that the deed was not intended to secure Faulkner on the supersedeas bond given on the appeal of the plaintiff Mabel Elliott from the judgment obtained against her by the intervener Mollie DeGraffenreid, and call to our attention evidence of the plaintiff Mabel Elliott in which she made the following statement:

"I signed the deed to give the property to Mr. Faulkner to keep my husband out of jail, to go his bond, that is what I considered it for, and for no other purpose."

They call attention, also, to the testimony of the defendant Faulkner:

"Q. I am talking about this supersedeas bond. Who asked you to sign that bond? A. Mr. Elliott. Mrs. Elliott never did talk to me in any way about signing that supersedeas bond."

If that testimony stood alone the appellants' point would be good, but the defendant Faulkner also testified:

"I had some conversation with James H. Elliott with reference to the purpose of delivering the deed to me. He first gave me a mortgage, and then the court or lawyers, something, didn't think that that was the thing to do and asked him to give me a deed, or I couldn't qualify without it to go on his bond. He asked me to go on his bond and I went on it, and he said he would deed me this property to protect me in anything that might happen or liabilities that I might be to that would cause me to lose anything. This bond was the criminal bond that he had reference to and he said that he would probably ask me to go on his wife's bond, and this deed would stand for the security for it. This conversation was after he had previously arranged to give me a mortgage, then changed to a deed. I went on his bond once after that and he said he would just let the deed stand for security for it, too."

The appellants make the contention that under the evidence it is clear that the deed was given only as security on the appearance bond of the husband, and that inasmuch as that was the only purpose for which Mrs. Elliott signed the deed that subsequent to the time the conditions of the mortgage so made had been satisfied by the husband's appearance in the trial, he (the husband) could not without the joint consent of his wife revive the mortgage as security on the supersedeas bond. In answer to this contention the appellees

cite *Moody v. Stubbs*, 94 Kan. 250, 146 Pac. 346, in which this court held:

"Where a husband and wife execute a deed upon property owned by her and she intrusts it to her husband to be delivered as security for a note executed by him ·to the grantee, and the husband without her knowledge delivers it under an arrangement made by him with the grantee that the note is to be renewed from time to time, extensions of the time of payment of the debt, made in pursuance of such arrangement, but without the knowledge of the wife, do not affect the release of her property.

"In such case the lien upon the property continues as security for each new note, notwithstanding that in each instance the old note is surrendered, and that the new notes are made to a transferee of the original note." (Syl. ¶¶ 1, 2.)

In the opinion the court said:

"Stubbs testified that the security was taken in the form of a deed because it was thought a mortgage would necessarily involve changes in renewals of the note. He dealt entirely with Moody in the matter. Whatever may have been the understanding between Mrs. Moody and her husband as to the precise terms under which the deed to her property was to be used as security for his debt, when she intrusted him with the fully executed deed, she voluntarily placed him as her agent in such a situation that Stubbs was justified in supposing that he was authorized to deliver it in pursuance of the understanding between himself and Moody, and this makes his action in the matter binding upon her." (p. 252.)

It appears from the record that the defendant Faulkner signed several bonds for the plaintiffs; that in addition to the original appearance bond he signed an appeal bond in the criminal case for plaintiff and he signed a bond in a habeas corpus proceeding. It further appears that the action of the intervener against Mabel Elliott was pending at the time the deed was executed, and had been for some time prior thereto. We think the evidence is sufficient to sustain the finding of the court. The plaintiff Mabel Elliott freely· and willingly· signed and executed the deed and delivered it to her husband without any reservation, thus constituting him her .agent for the purpose of delivering it to the grantee therein named. As pointed out in the case of *Moody v. Stubbs*, supra, it does not make any difference under the facts shown in this case what may have been the understanding between Mabel Elliott and her husband, coplaintiff herein. He was nevertheless her agent and she was bound by his acts and the statements made by him when he delivered the deed. It is to be noted that the plaintiff Mabel Elliott is now seeking to cancel the deed and thus defeat a recovery

as against the defendant Faulkner upon a bond executed by her as principal and by Faulkner only as her surety. Here the security is being applied against an obligation of the wife and not of the husband. Faulkner had become liable as surety on her bond. The court very properly permitted the filing of the intervening petition.

The appellants also allege that the property described in the deed is their homestead and that the evidence established that fact. They urge that the court erred in not making a finding that the property was their homestead. No request for findings was made. They further call attention to section 9 of article 15 of the constitution of the state of Kansas, which provides:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife."

The appellants urge that the deed should be set aside because the property is their homestead and that the wife did not consent that it be used as security on the supersedeas bond. The only trouble with that contention in the present case is that the wife did in fact consent to the alienation jointly with her husband. She signed the deed and delivered it to the husband as her agent to be in turn delivered by him to the defendant Faulkner.

In view of the findings of the court and the record in this case it is clear that she did consent to the alienation of the property and therefore lost her right to contend that she can now hold it as a homestead exempted from any and all obligations or judgments against her.

We have examined the other specifications of error made by the appellants, together with the record, and do not find any reversible error therein.

The judgment is affirmed.