No. 44,484

MID KANSAS FEDERAL SAVINGS AND LOAN ASSOCIATION OF WICHITA, a Corporation, *Appellee*, v. DOROTHY BINTER, *Appellant.*

(415 P. 2d 278)

Opinion filed June 11, 1966.

*J. Francis Hesse,* of Wichita, argued the cause, and *Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, James W. Sargent, Stanley E. Wisdom, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda, Charles M. Cline, Richard A. Loyd, Stephen M. Blaes,* and *Jack S. Ramirez,* all of Wichita, were with him on the brief for the appellant.

*Lewin E. Timmerman,* of Wichita, argued the cause, and *Carl A. Bell, Jr.,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action to foreclose a real estate mortgage wherein homestead rights are asserted by a wife as a bar to the suit because she did not consent to the execution of the mortgage.

There is no substantial dispute as to the facts. Appellant and her former husband, Doctor Paul A. Binter, owned their home in

Wichita in joint tenancy. Doctor Binter died in 1958 and appellant thereby became the owner of the property which is the subject of this action. She and her three minor children have occupied the property at all times since 1955. Appellant became acquainted with a Doctor White, whom she subsequently married. Prior to that marriage she loaned him $13,750.00 so that he could purchase an airplane. The marriage occurred at Miami, Oklahoma, on November 22, 1961. At Miami, during the one and one-half hour interval between the taking of the blood tests and the performance of the marriage ceremony, appellant gave White a cashier's check for $39,000.00, which check she had secured two or three days before in Wichita. White insisted on having the check before he would go through with the marriage. The purpose of this loan was to enable White to purchase a dental practice in Kansas City. Neither of the aforesaid sums was ever repaid. At White's request the marriage was kept secret although some of appellant's friends and relatives at some undisclosed time during its existence did learn of it. Appellant also indicated that she wanted the marriage kept secret. Appellant and White never lived together at the home in question, and in fact have lived apart. White never contributed to her support. In January, 1962, White informed appellant he had found a dental practice to purchase in Kansas City and that they would move to Kansas City as soon as the purchase of the practice was arranged. He told her he wanted to obtain a loan commitment on the house owned by her and in order to do this he asked her to execute a deed conveying that property to him. He asked her to sign the deed as "Dorothy Binter," which appellant voluntarily did. The deed, dated January 16, 1962, recited the grantor therein as being Dorothy Binter, widow of Paul A. Binter, and the grantee as Westley E. White, a single man. During her marriage to Doctor Binter she had participated with him in three or four real estate purchases.

It appears that on the same date that the deed was executed, January 16, 1962, White made application to appellee loan association for a $20,000 loan on the house, indicating on the application that he was a single man and that the purpose of the loan was "to purchase." White submitted an abstract of title to the property which was examined by appellee's title examiner and a preliminary title opinion rendered showed the fee title on January 22, 1962, to be in Dorothy Binter. An appraiser for appellee went inside the home in making his appraisal and he "did take the owner's name

down as 'Binter.'" On February 1, 1962, White executed a note and mortgage on the premises to appellee for $20,000, receiving that amount. Appellant never signed either instrument. The mortgage and appellant's deed to White were recorded the next day. White told appellant the loan was not approved and that he did not get the loan. Appellant first learned of the loan and the mortgage securing it about April 1, 1962, when a delinquency notice was mailed to the house. Later White told her he had obtained the loan and spent the money. She contacted her attorney but nothing was ever done concerning White. Appellant continued to live apart from White but did go on trips with him. Appellant told real estate agents, while attempting to sell the house, that there was a mortgage on it. Since 1961 she has filed her tax returns as Dorothy H. Binter, she registered under that name, and had at least one bank account, her telephone number and her name on the children's school records in that name. In November, 1964, appellant divorced White, having the property in question set over to her free and clear of any claims of his and in the decree also securing a judgment against White for $72,750.00, representing the money which she stated had been fraudulently taken from her, including the proceeds of the $20,000 mortgage involved here.

Evidently a few payments were made on the note and mortgage but they became delinquent and appellee filed this foreclosure action naming White and appellant as defendants, claiming initially that its mortgage was a purchase money mortgage upon which less than one-third had been repaid, thereby reducing any redemption period to six months. Needless to say, White has wholly defaulted. As the issues were finally joined, appellant invoked the protection of the homestead exemption (Constitution of Kansas, Article XV, § 9) because she had never signed the mortgage. The trial court made findings of fact, acknowledging that appellant had occupied the property as a homestead but holding that by her execution and delivery of the deed she put into motion the transaction whereby appellee became an innocent mortgagee and that thereby her right of homestead became subject to appellee's mortgage lien, ruling adversely to her, rendering judgment in rem against the property for the amount of the unpaid note and decreeing foreclosure of appellee's mortgage with an eighteen months' redemption period.

Analogous situations have been before this court. In the case of Roach v. Karr, 18 Kan. 529, the wife signed a mortgage on her homestead without knowing what it was. She could read a little

by spelling the words; the mortgage was not read to her; upon inquiry of her husband as to the contents of the instrument at the time she made her mark, she was told it was none of her business, that it did not amount to a row of pins, that it was a note. She believed the instrument to be a note. In a foreclosure action by the mortgage holder, who was innocent of any irregularity in the signing of the instrument, the court stated on the question of her consent:

"If she was in any manner mistaken or defrauded as to the contents of the mortgage, such result was the consequence of her own gross negligence. She should have demanded that the instrument be read to her. If she relied on the representations of her husband, it was at her peril alone. The sound policy of the law forbids that a person thus situated, as Mrs. Roach was, and signing a mortgage under such circumstances as herein presented, should thereafter, as against the mortgagee, innocent of any irregularity in the execution of the instrument, assert that she never consented to the execution thereof. *Helm v. Helm*, 11 Kas. 21; *Hallenbeck and Wife v. Dewitt*, 2 Johns. 404. A different rule would open the door to the grossest frauds, and lead to unfortunate results scarcely to be realized." (p. 534.)

This early case has been cited approvingly throughout the years many times on this point by this court and by the courts of other states.

In *Lawrence v. Investment Co.*, 51 Kan. 222, 32 Pac. 816, two illiterate Indians deeded title to their land which they had occupied for many years as their home to a grantee who grossly deceived them by informing them they were executing a mortgage. The villain in the piece subsequently executed a mortgage to the defendant who relied upon the record title as revealed by examination of the abstract in making its loan. In denying the plaintiff Indians' efforts to reacquire title of the property free of this latter mortgage the court said:

"Through the misrepresentation and fraud of third parties, the plaintiffs placed the apparent title in Josie Saunders, who put their deed—valid upon its face—upon record, and subsequently incumbered it with a mortgage. They parted with the legal title, believing the instrument which they had signed was a mortgage; and while they were grossly deceived, they clothed the grantee with the apparent ownership and power of disposition of the land. On the apparent validity of this title, and in good faith, as the findings show, the investment company loaned its money on a mortgage made by the fraudulent grantee. . . . Who was most to blame, and who should bear the loss? The plaintiffs' action in negligently allowing the legal title to go to another, with the apparent power to convey and mortgage the land, has been the means by which the investment company was deceived. By their conveyance, the grantee was held out to the world as the owner of the land, and

innocent persons were thereby invited to deal with her as such owner. The rule in equity which controls is, that where one of two innocent persons must suffer by the fraud of a third person, he who trusted the third person and placed the means in his hands to commit the wrong must bear the loss. (*Jordan v. McNeil*, 25 Kas. 459.) In that case it was held that a conveyance obtained through fraud and deceit is not a nullity, but that a conveyance from the fraudulent grantee to a third person who purchased the property in good faith and for a consideration will be held valid as against the first grantor. In *McNeil v. Jordan*, 28 Kas. 7, this same doctrine was reaffirmed, and it was held that the grantor of the fraudulent deed must suffer loss rather than an innocent purchaser or some one who in good faith had obtained a mortgage from the fraudulent grantee. The same subject received consideration in *The State v. Matthews*, 44 Kas. 596, where it was said that

" 'Upon this same principle, it is almost universally held, that whenever an instrument is procured from one person by the fraud or villainy of another, even if such fraud or villainy should amount to a criminal offense, if all the rights which the instrument apparently gives should at that time or afterwards be transferred to another, who should be an innocent and *bona fide* holder for value, the innocent and *bona fide* holder could enforce the instrument against the maker, although the maker might also be an innocent person. In such a case, the maker would be estopped from claiming that the instrument was void as against the innocent *bona fide* holder.' " (pp. 230, 231.)

See, also, *Buchanan v. Gibbs*, 26 Kan. 277; *Ort v. Fowler*, 31 Kan. 478, 2 Pac. 580; *Moody v. Stubbs*, 94 Kan. 250, 146 Pac. 346; *Ferguson v. Nuttleman*, 110 Kan. 718, 205 Pac. 365; and *Elliott v. Faulkner*, 131 Kan. 528, 292 Pac. 918.

Appellant contends that appellee cannot be considered an innocent party because its appraiser learned that the owner of the property was someone named "Binter" and that she actually was in possession of the property. Unfortunately for appellant this can avail her nothing. This situation is exactly what appellee might have expected to find from investigation and would not put it on guard that anything was amiss. It had an abstract of title showing title to the property to be in Dorothy Binter. It had an application for a loan for the purpose of purchasing the property, along with a deed from the record owner to the applicant. Appellee's actions in handling the loan appear regular throughout. The appraiser's report merely confirmed appellee's prior knowledge of the transaction. A similar situation existed in *Sellers v. Crossan*, 52 Kan. 570, 35 Pac. 205, wherein a husband and wife conveyed their homestead by warranty deed to kinfolk. The deed was actually intended as a mortgage to secure a loan, with an agreement to reconvey the property upon payment of the loan. The kinfolk in turn mortgaged the property to a third person who had no knowledge of the true

nature of the deed. The husband and wife and their daughter continued to occupy the property throughout and they later sought to void the latter mortgage on the ground they had never consented to it. This court stated:

"It is true, as contended, that a mortgage lien cannot be created upon a homestead without the joint consent of the husband and wife, but, like every other interest, it may be surrendered, transferred, or lost. The action of the parties holding such an interest may be such as to operate as an abandonment or to estop them from claiming such interest. Although they did not sign the mortgage, they had previously executed a warranty deed which upon its face transferred every vestige of title from them." (pp. 571, 572.)

Plaintiffs in *Sellers* further contended the mortgagee must be charged with notice of their actual rights because of their possession of the property. On this the court stated:

"It is insisted that the occupation of the premises by the plaintiffs and their family required everyone dealing in the property to take notice of the title which they actually held and of the homestead interest to which their occupancy entitled them. It is true the general rule is, that the possession of land is notice of the title under which the occupant claims, but this rule has no application where the party in possession has put upon record a title inconsistent with his possession. In such cases, the possession is to be considered as in subserviency to the record title. (*McNeal v. Jordan*, 28 Kas. 7.) In the absence of actual notice, Crossan had a right to rely upon the declaration made in plaintiffs' deed, that their conveyance was absolute and without reservation. If the deed was intended as a mortgage, and anyone is to suffer for the mistake, it should be the one whose conduct caused the loss. Both of the plaintiffs having joined in the alienation of the land, they are, under the circumstances of this case, estopped from impeaching or contradicting it, or setting up any secret claim or interest therein as against the defendant." (pp. 573, 574.)

The principles established in the foregoing cases make it clear appellant cannot prevail here. She had a right to do with her property as she saw fit. She took the unusual method of conveying it by an instrument which on its face gave her husband the exclusive right to deal with it as he saw fit, ostensibly for the ultimate purpose of securing a loan upon the property. She clothed him with apparent authority to encumber the property without further action on her part. This is exactly what her husband did, although without any accounting to her. By her own acts in making the deed and concealing her marriage she made possible the deception practiced upon appellee. One can scarcely conceive a more complete alienation of homestead rights than by voluntary warranty deed valid upon its face, and appellant cannot now deny its effect to the

prejudice of innocent third parties who have in good faith relied upon it. Appellant's redress for any wrong done her must lie elsewhere than in this action. Of course, a different rule would prevail where the mortgagee is aware of any fraud or irregularity (see *Larrick v. Jacobson,* 139 Kan. 522, 32 P. 2d 204).

The trial court's reasoning and judgment were correct and the order appealed from is affirmed.

APPROVED BY THE COURT.