(608 P.2d 1370)
No. 50,622

THE CAIRO COOPERATIVE EXCHANGE, *Appellant,* v. THE FIRST NA-
TIONAL BANK OF CUNNINGHAM, *Appellee.*

Petition for review granted May 19, 1980.

Opinion filed March 21, 1980.

*J. Eugene Balloun* of Payne & Jones, Chartered, of Olathe, and *Terry D. Bertholf,* of Hutchinson, for the appellant.

*Thomas L. Theis* of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of

Topeka, and *David D. Gaumer* of Wunsch, Wunsch, Gaumer & Solomon, of Kingman, for the appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

SPENCER, J.: This is an action by a customer-depositor against a depositary-payor bank to recover on various checks alleged to have been wrongfully paid by the bank over forged and restrictive endorsements, and charged to the customer's account.

Plaintiff sought relief on theories of breach of contract, breach of warranty, conversion, and negligence. Defendant relied on agency and estoppel, and also on the defense embodied in K.S.A. 84-3-405 (1)(*b*), commonly referred to as the fictitious payee defense. Summary judgment was entered for defendant.

Plaintiff has specified four issues on appeal, all of which, in the final analysis, are contained in the proposition of whether, under the facts of this case, plaintiff might prevail against defendant under any theory of recovery.

K.S.A. 60-256(*c*) provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Relevant principles governing the propriety of summary judgment were recently summarized in *Fredricks v. Foltz,* 225 Kan. 663, 666, 594 P.2d 665 (1979), and, bearing such principles in mind, we consider the record in this case in the light most favorable to plaintiff.

The facts as agreed by the parties are stated in substance. Plaintiff is a farm cooperative engaged in the usual and customary lines of business conducted by farm cooperative elevators, with its principal place of business at Cairo in Pratt County, but with a branch at Cunningham in Kingman County. In 1963 it employed one K.C. Jones, and in 1969 named him manager in charge of daily operations at the Cunningham branch. Plaintiff maintained a checking account with defendant bank in which it regularly deposited and withdrew funds. Shortly after the employment of Jones as its manager of the Cunningham branch, a bank signature card as authorized by plaintiff's general manager was signed by Jones and delivered to defendant. By this means, Jones, as the only person whose signature appeared on that card, was authorized by plaintiff to represent and act for plaintiff in all its transactions with defendant.

During the period of time commencing September 30, 1969, to and including March 6, 1976, Jones caused to be issued in plaintiff's name as drawer 101 checks for various amounts to various customers of plaintiff and signed by Jones on behalf of plaintiff. These items were drawn on plaintiff's regular check forms and, although the named payees were customers of plaintiff, it was never intended that the named payees have any interest in the instruments. The checks so drawn by Jones fall into two categories:

    1.   91 checks for a total of $46,564.46 on each of which it appears that Jones wrote the name of the payee on the back in blank and, using a rubber stamp provided by plaintiff, caused each to be endorsed "Pay to the order of First National Bank, Cunningham, Kansas. For Deposit Only, Cairo Co-op Equity Exchange, Farmer's Co-op." These checks were presented by Jones on or about their various dates to defendant, where he requested and received cash for each. They were not entered on deposit slips or deposited to plaintiff's account.

    2.   10 checks for a total of $9,229.18 on each of which it appears that Jones wrote the name of the payee on the back in blank and which were presented by Jones on or about their various dates to defendant, where he requested and received cash for each. None of these checks bore plaintiff's rubber stamp endorsement.

It appears that Jones retained the funds represented by these checks for his own use and, as far as the record reveals, his present whereabouts are unknown.

Defendant was not notified of any restrictions on the authority of Jones to act for plaintiff in its banking transactions at Cunningham, nor was any restriction placed on the amount of cash Jones was permitted to withdraw from plaintiff's account with defendant. He had full authority to write checks on the account and, as agreed by the parties, "In the mind of the community . . . K.C. Jones was the cooperative in Cunningham, and had authority to transact all business for the Cunningham branch and was authorized to do anything but embezzle."

In addition to the admitted facts, plaintiff's evidence reveals it received monthly bank statements from defendant which recorded deposits and withdrawals made to and from plaintiff's account, together with the checks paid during each accounting

period. In response to a request for admissions, plaintiff stated that neither defendant nor any of its officers or employees had actual knowledge of Jones' scheme to defraud. Plaintiff, however, denied that defendant or its officers or employees did not participate in the scheme in that those persons and others paid money to Jones on checks payable to and endorsed in the name of third parties known by defendant not to be Jones, contrary to the restrictive endorsements, and charged plaintiff's account for those items.

In his deposition, Dale Parsons, plaintiff's general manager, indicated plaintiff was concerned that things were not quite right at its Cunningham branch for as long as three years prior to the discovery of the fraud.

Although plaintiff seeks recovery on any one or more of the theories contained in its petition, we deem it unnecessary to analyze this case on a theory-by-theory basis.

Considering first the restrictively endorsed checks, we find that the endorsement "for deposit only" is a restrictive endorsement under K.S.A. 84-3-205, which provides in part:

"An indorsement is restrictive which either

. . . .

"(c) includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms signifying a purpose of deposit or collection  . . . ."

The effect of a restrictive endorsement is set forth in K.S.A. 84-3-206, which provides in part:

"(3) Except for an intermediary bank, any transferee under an indorsement which is conditional or includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms  . . .  must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement and to the extent that he does so he becomes a holder for value."

Under this section, there can be little doubt that defendant, as a depositary-payor bank [K.S.A. 84-4-105(*a*) and (*b*)], had the duty to apply the proceeds of the checks consistently with the restrictive endorsements, *i.e.,* to deposit the proceeds in plaintiff's account rather than to pay cash to Jones. Its failure to do so could, under appropriate circumstances, render the bank liable to its depositor. See *Underpinning v. Chase,* 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979), *aff'g* 61 App. Div. 2d 628, 403 N.Y.S.2d 501 (1978). However, in this case there are facts and circumstances which preclude the assertion of plaintiff's claim.

In its conclusions, the trial court correctly noted that it is possible for the parties to vary by agreement the provisions of K.S.A. 84-3-206 and that Jones, while acting within the scope of his employment with plaintiff and pursuant to authority given him by plaintiff, effectively discharged defendant of any obligation it may have had to apply the proceeds of the checks consistently with the restrictive endorsements. This was accomplished by Jones' request for and his receipt of cash on the various checks. K.S.A. 84-1-102 (3) provides:

"The effect of provisions of this act may be varied by agreement, except as otherwise provided in this act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable."

It was also concluded by the trial court that, because of the implied or apparent authority of Jones, payments to him were the equivalent of payments to plaintiff and, when money was paid to Jones, the bank was discharged of its obligation on the endorsements although Jones thereafter allegedly misappropriated the funds; and, by reason of all of the circumstances, plaintiff had lost any right to assert noncompliance with the restrictive endorsements. It was also concluded, in addition to everything else, that plaintiff was precluded from asserting claim against defendant on any theory by reason of its own negligence. Because Jones was authorized to represent and act for plaintiff in all its transactions with the bank and because it was Jones who placed the restrictive endorsements on the checks, it was within his apparent authority to waive the effect of the restrictive endorsements on behalf of plaintiff.

K.S.A. 84-1-103 provides that, unless displaced by the particular provisions of the UCC, the principles of law and equity, including the law of agency and estoppel, supplement the provisions of the Code. See *Service Iron Foundry, Inc. v. M.A. Bell Co.*, 2 Kan. App. 2d 662, Syl. ¶ 4, 588 P.2d 463 (1978).

Equitable *estoppel is the effect of voluntary conduct whereby* one is precluded, both at law and in equity, from asserting rights against another who has relied on such conduct. One asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when there was a duty to speak, induced the one asserting the doctrine to believe certain

facts existed. The doctrine is based on the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. *Bowen v. Westerhaus,* 224 Kan. 42, 45-46, 578 P.2d 1102 (1978); *Clawson v. Garrison,* 3 Kan. App. 2d 188, 199, 592 P.2d 117 (1979). There is no definite rule as to when the doctrine will be applied; each case must be determined on its own facts. *Safeway Stores v. Wilson,* 190 Kan. 7, 12, 372 P.2d 551 (1962); *Coffey v. Stephens,* 3 Kan. App. 2d 596, 597, 599 P.2d 310 (1979).

The undisputed facts are that Jones conducted his fraudulent scheme for more than six years. He received cash from defendant on a total of 91 restrictively endorsed checks without defendant's knowledge that anything was amiss. Each month during that period, plaintiff received from defendant its canceled checks and a bank statement. Even a cursory examination of these documents would have revealed that the restrictively endorsed checks had been presented and paid but had not been deposited. Plaintiff had the means of ascertaining the facts and Jones' scheme to defraud from the date the first restrictively endorsed check cleared the bank and was returned to plaintiff. Its failure to do so and to notify defendant of the wrongful acts of Jones amounts to an inducement to defendant to believe the cashing of the restrictively endorsed checks by order of Jones was at least condoned by plaintiff. In our opinion, such conduct precludes the assertion of any claim against defendant by reason of those checks.

Good faith is defined in K.S.A. 1979 Supp. 84-1-201 (19) as "honesty in fact in the conduct or transaction concerned" and requires no actual knowledge or participation in any material infirmity in the transaction. *Kaw Valley State Bank & Trust Co. v. Riddle,* 219 Kan. 550, Syl. ¶ 4, 549 P.2d 927 (1976). In light of plaintiff's admissions, it cannot be said that defendant did not act in good faith.

Further support for this position is found in K.S.A. 84-3-406, which provides in substance that any person, who by his negligence substantially contributes to a material alteration of an instrument or the making of an unauthorized signature, is precluded from asserting the alteration or lack of authority against a drawee who pays the instrument in good faith and in accordance

with reasonable commercial standards of the drawee's business. We find this section persuasive because it embodies the principle which is applicable in this case, that a party is estopped by reason of his negligent conduct as against another party who in good faith relies thereon. We note also K.S.A. 84-4-406 which in effect requires a customer who has received a statement of account accompanied by items paid in good faith in support of the debit entries on that statement to exercise reasonable care and promptness in examining the statement and items to discover unauthorized signatures or alterations on the face or back of any item, and to notify the bank promptly after discovery thereof. Failure to do so precludes the customer from asserting against the bank any claim which might otherwise have been proper by reason of such discrepancies. See *Coleman v. Brotherhood State Bank,* 3 Kan. App. 2d 162, 592 P.2d 103 (1979). Although 4-406 does not specifically refer to the handling of a restrictively endorsed check, it is clearly the intent of the law that a bank customer must exercise reasonable care and promptness in examining the statement of his account and in notifying the bank of improper debits and other discrepancies in the account. This plaintiff failed to do.

Plaintiff is bound by the acts of its agent within the apparent scope of his authority even though no actual authority to perform such acts had been conferred. Apparent authority is that which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. See *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 553 P.2d 254 (1976).

It is undisputed that Jones was in sole control of plaintiff's Cunningham branch; that only he was authorized to draw checks on plaintiff's account; that the only written agreement between plaintiff and defendant (*i.e.,* the signature card) provided in effect that Jones alone was authorized to act for plaintiff "in all its transactions with said Bank"; that Jones had express authority to write checks for cash on plaintiff's account; and that plaintiff never notified defendant of any restriction on Jones' authority. Clearly, plaintiff clothed Jones with authority, apparent if not actual, to void the restrictive endorsements and to relieve defendant of its duty to apply the proceeds consistently with such endorsements. See K.S.A. 84-1-102 (3); 84-4-103.

Where, as here, one of two innocent parties must suffer because

of wrongdoing of a third person, the one who trusted the third person and placed the means in his hands to commit the wrong must bear the loss. *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, Syl. ¶ 7, 528 P.2d 134 (1974); *Bicknell v. Jones,* 203 Kan. 196, Syl. ¶ 3, 453 P.2d 127 (1969); *Mid Kansas Federal Savings & Loan Ass'n v. Binter,* 197 Kan. 106, Syl. ¶ 2, 415 P.2d 278 (1966).

As to the ten checks within the second category, we find plaintiff's reliance on the warranties set forth in K.S.A. 84-4-207 to be misplaced. Those warranties are made only by a "customer or collecting bank." Since defendant is neither, that statute does not apply.

UCC provisions relevant to the ten checks on each of which Jones had written the name of the payee on the back in blank as an apparent endorsement by the payee are noted:

K.S.A. 1979 Supp. 84-4-401 (1):

"As against its customer, a bank may charge against the customer's account any item which is otherwise properly payable from that account . . . ."

K.S.A. 84-3-419 (1):

"An instrument is converted when

. . . .

"(c) it is paid on a forged indorsement."

Obviously, a check presented and paid by a bank over the forged endorsement of the payee may under proper circumstances render the bank liable for any damage sustained by the true owner of that item. However, K.S.A. 84-3-405 (1) provides:

"An indorsement by any person in the name of a named payee is effective if

. . . .

"(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument . . . ."

and Official UCC Comment No. 3 to that statute provides in part:

"The following situations illustrate the application of the subsection [(1)(b)].

. . . .

"c. The drawer makes the check payable to P, an existing person whom he knows, intending to receive the money himself and that P shall have no interest in the check."

Admittedly, Jones had authority to draw checks for and on behalf of his employer on the defendant bank and none of the

checks with which we are here concerned lacked validity by reason of the maker's signature having been forged. It is also admitted that the payees named were fictitious in that it was never intended that the named payees have any interest in the checks. All therefore fall within the provisions of K.S.A. 84-3-405 (1)(*b*) which carves an exception to the general rule that forged endorsements are ineffective to pass title or to authorize a drawee to pay. As it was intended by the drawer of each of the checks that the named payee have no interest in the instrument, the endorsement by Jones in the name of each payee was "effective" to pass title and each was "properly payable" under the provisions of K.S.A. 1979 Supp. 84-4-401 (1), and the risk of loss shifted to the drawer. See White and Summers, Uniform Commercial Code § 16-8, pp. 541-550 (1972); Clark and Squillante, The Law of Bank Deposits, Collections and Credit Cards, pp. 147-150 (1970); Clark and Squillante, pp. 268-280 (1979 Supp.); *General Acc. F.&L. Assur. Corp. v. Citizens F.B.&T. Co.,* 519 S.W.2d 817 (Ky. 1975). Official UCC Comment No. 4 to K.S.A. 84-3-405 states:

"The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee."

See also *Perini Corp. v. First Nat. Bank of Habersham County,* 553 F.2d 398 (5th Cir. 1977).

Plaintiff contends summary judgment was improperly granted as there remained the issue of defendant's negligence. It is to be borne in mind that none of the checks here involved contained alterations or omissions sufficient to alert bank personnel to anything out of the ordinary. As far as defendant was concerned, it was the drawer of the check who stood before the teller's window and demanded payment in cash. There is nothing in this record to indicate anything other than good faith in the transactions on the part of defendant. Nor is there anything in the record to indicate, or is it even alleged, that defendant's transactions with plaintiff as conducted by its agent were a departure from reasonable commercial standards of defendant's business. Moreover, any failure of defendant to exercise ordinary care in handling the various items in question is offset by plaintiff's own

negligence, as previously discussed. *Cf. Hanover Ins. Companies v. Brotherhood State Bank,* 482 F. Supp. 501 (D. Kan. 1979).

Having considered the record in the light most favorable to plaintiff, we find no genuine issue of material fact remaining and the undisputed facts permit only the conclusion that defendant is entitled to judgment as a matter of law. See *Mildfelt v. Lair,* 221 Kan. 557, Syl. ¶ 2, 561 P.2d 805 (1977); *Young v. Hecht,* 3 Kan. App. 2d 510, Syl. ¶ 8, 597 P.2d 682, *rev. denied* 226 Kan. 793 (1979); *Goff v. American Savings Association,* 1 Kan. App. 2d 75, Syl. ¶ 4, 561 P.2d 897 (1977).

Affirmed.