**FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,**

v.

**Gary CULVER, Defendant.**

**Civ. A. No. 85–2080.**

United States District Court,
D. Kansas.

July 3, 1986.

Brian E. Gardner, Michael C. Manning, Mark W. McGrory, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., Christopher A. Byrne, Office of Gen. Counsel, Federal Deposit Ins. Corp., Washington, D.C., for plaintiff.

Lee M. Smithyman, Howard L. Rosenthal, Weeks, Thomas & Lysaught, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on defendant's motion to dismiss for lack of personal jurisdiction, on plaintiff's motion for summary judgment, and on defendant's motion for leave to file a demand for jury trial out of time. After reciting the material facts (construed most favorably to defendant), we will address these pending motions.

In 1984, defendant entered into a business arrangement with a Mr. Nasib Ed Kalliel. Kalliel was to assume control over the financial aspects of defendant's farm, while defendant was to manage the farming operation—receiving both a salary and a share of the profits. In July or August of that year, defendant informed Kalliel that he urgently needed money in order to stave off foreclosure. One week later, $30,000.00 was wire-transferred from the Rexford State Bank in Rexford, Kansas, to defendant's bank in King City, Missouri. Although defendant knew that the money had come from the Rexford State Bank, he thought that Kalliel would be responsible for its repayment.

About one week later, defendant was approached by a Mr. Jerry Gilbert, whom defendant believed was working for Kalliel. Gilbert told defendant that "Rexford State Bank wanted to know where the $30,000.00 went, ... for their records." Gilbert presented defendant with a document and asked defendant to sign it. Apparently, Gilbert either told defendant, or at least led him to believe, that the document was merely a receipt for the $30,000.00 he had received. In any event, defendant signed the document without thereby intending to commit himself to the repayment of any money.

The document defendant signed was a preprinted promissory note form. As might be expected, the form contained a number of blanks into which the parties were expected to insert terms specific to their own transaction. At the time defendant signed the document, none of those blanks had been completed. Thus, the note contained no execution date, no maturity date, no principal amount, and no interest rate. The name of the payee, "THE REXFORD STATE BANK, Rexford, Kansas," *was* printed on the note at that time. Moreover, the note did provide that the principal and accrued interest were to be paid to the payee "at its offices."

Although defendant assumed that the figure $30,000.00 would eventually be written on the document, some unknown individual completed the note as follows:

(1) the principal amount was shown as $50,000.00;

(2) the execution date was shown as August 2, 1984;

(3) the maturity date was shown as February 2, 1985; and

(4) the interest rate was shown as 14½ percent per annum until maturity, and 18½ percent per annum thereafter.

Although defendant received only $30,000.00, the Rexford State Bank did deposit the full $50,000.00 in an account controlled by Kalliel. The $30,000.00 apparently came from that account.

Eventually, the note was returned to the Rexford State Bank. When that bank became insolvent, the Federal Deposit Insurance Corporation ["FDIC"] was appointed

as its receiver. In its *corporate* capacity, the FDIC then purchased a number of the bank's assets from the receiver—including the note at issue here. At that time, the FDIC had no actual knowledge of the events that had transpired prior to its purchase of the note. As of yet, defendant has made no payment of either principal or interest.

Other than receiving the $30,000.00 wire-transfer from the Rexford State Bank, and then signing the note naming the bank as payee, defendant has had no other relevant contact with the state of Kansas.

## I. *Defendant's Motion to Dismiss.*

In addressing a motion to dismiss for lack of personal jurisdiction, we must first determine whether the moving defendant's conduct falls within the scope of any of the enumerated provisions of the Kansas Long-Arm Statute, K.S.A. 60–308(b). Independently, we must determine whether such conduct satisfies the "minimum contacts" requirements of constitutional due process. *Thermal Insulation Systems, Inc. v. Ark-Seal Corp.*, 508 F.Supp. 434, 436 (D.Kan.1980); *J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246, 1247 (D.Kan.1978). When the existence of personal jurisdiction is controverted, plaintiff need only establish a prima facie case that the statutory and constitutional requirements for the assumption of personal jurisdiction are satisfied. *Thermal Insulation Systems*, 508 F.Supp. at 437; *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan.1979). Factual doubts are to be resolved in favor of the plaintiff. *Ammon*, 468 F.Supp. at 1309.

Service of process on this defendant was clearly authorized by the Kansas Long-Arm Statute. Under K.S.A. 60–308(b)(5), the courts of this state may assert jurisdiction over any cause of action arising from the "entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." As quoted above, the note in question provides that its maker is to pay the stated amount to the Rexford State Bank "at its offices." Because those offices are in Kansas, some portion of the contract represented by that note was to be performed in this state. Accordingly, the long-arm requirement has been satisfied. *See Rosedale State Bank & Trust Co. v. Stringer*, 2 Kan.App.2d 331, 579 P.2d 158 (1978).

Similarly, our exercise of personal jurisdiction over defendant offends no principle of constitutional due process. "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). To some extent, due process is a matter of foreseeability. "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In this context, the decision in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), is particularly relevant. The Court there noted that "with respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. 105 S.Ct. at 2182 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)).

As outlined above, the note executed by defendant stated that its maker would pay the specified amount to the Rex-

ford State Bank "at its offices." Defendant thereby obligated himself to send payments of principal and interest into the state of Kansas. It follows that we act consistently with the dictates of due process when we entertain this suit seeking to enforce that obligation.

Further support for this position may be found in *Continental American Corp. v. Camera Controls Corp.*, 692 F.2d 1309 (10th Cir.1982). The court there considered another contract in which payments were to be made in the state of Kansas. In holding that the maintenance of a suit on that contract against a non-resident defendant did not offend "traditional notions of fair play and substantial justice," the court noted that "by ceasing to make partial payments, defendant should certainly have foreseen the possibility of being haled into court in Kansas." 692 F.2d at 1314. The same analysis is applicable here; in executing and returning this particular note to the state of Kansas, defendant rendered himself subject to the personal jurisdiction of this court.

II. *Plaintiff's Motion for Summary Judgment.*

Entry of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering such a motion, we must examine all evidence in the light most favorable to the opposing party. *Prochaska v. Marcoux*, 632 F.2d 848, 850 (10th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Where differing inferences reasonably could be drawn from conflicting affidavits and depositions, summary judgment should be denied. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, when the movant has filed a properly supported motion, the opponent's response must, by affidavits or otherwise,

set forth specific facts showing that there is a genuine issue for trial. "If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed. R.Civ.P. 56(e). In any event, the Tenth Circuit requires the moving party to demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985).

Recognizing that "[t]here is no doubt that state and federal law provide the Federal Deposit Insurance Corporation with holder in due course status in the instant litigation," (Defendant's Brief of May 2, 1986, at 11) defendant concedes that the "personal" defenses of fraud in the inducement, estoppel, and failure of consideration would be ineffective against plaintiff's claim. *See F.D.I.C. v. Vestring*, 620 F.Supp. 1271 (D.Kan.1985). Accordingly, defendant seeks to assert the "real" defense of fraud in the factum. *See* K.S.A. 84–3–305(2)(c). Plaintiff denies that the facts as alleged by defendant constitute fraud in the factum. Alternatively, even assuming that defendant can establish the elements of fraud in the factum, plaintiff contends that such a defense is ineffective against the FDIC because of the doctrine enunciated in *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and codified at 12 U.S.C. § 1823(e). Because we conclude that defendant cannot demonstrate fraud in the factum, we do not reach plaintiff's arguments regarding *D'Oench, Duhme* and section 1823(e).

The "fraud in the factum" defense is codified at K.S.A. 84–3–305(2)(c), which provides as follows:

> *Rights of a holder in due course.* To the extent that a holder is a holder in due course he takes the instrument free from
>
> ....
>
> (2) all defenses of any party to the instrument with whom the holder has not dealt *except*
>
> ....
>
> (c) such misrepresentation as has induced the party to sign the instrument

with neither knowledge nor reasonable opportunity to obtain knowledge of its *character* or its *essential terms.*

(Emphasis added.) As suggested by our factual summary, defendant contends that he signed the note under the misapprehension that it was merely a receipt. He thus denies having knowledge of the document's "character" at the time he signed it. Moreover, because the note's execution date, maturity date, principal amount and interest rate were all blank at the time he signed it, defendant contends that he had neither knowledge nor reasonable opportunity to obtain knowledge as to the note's "essential terms."

To determine whether these facts fit the definition of fraud in the factum, we look elsewhere in the Kansas Uniform Commercial Code. For instance, Official UCC Comment 7 to section 3–305 provides this advice:

> Paragraph (c) of subsection (2) is new. It follows the great majority of the decisions under the original Act in recognizing the defense of "real" or "essential" fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.
>
> *The test of the defense here stated is that of excusable ignorance of the contents of the writing signed.* The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge.

(Emphasis added.) A portion of the 1983 Kansas Comment to this same section offers guidance as to the proper construction of the term "excusable ignorance." The Comment provides as follows:

Kansas decisional law would seem to be in accord on the possibility of fraud in the factum as a real defense, the decision in *Ort v. Fowler,* 31 K. 478, 2 P. 580 (1884), being a good example of facts not satisfying the defense because of the failure of the maker to satisfy a standard of conduct comparable to that required by this subsection.

Given this Kansas Comment's reference to *Ort,* an examination of the facts and the holding in that case should be useful in determining whether defendant showed "excusable ignorance" in mistaking the note at issue here for a receipt.

In *Ort,* a farmer was working alone in his field. A stranger came up to him and represented himself to be the state agent for a manufacturer of iron posts and wire fence. After some conversation, the stranger persuaded the farmer to accept a township-wide agency for the same manufacturer. The stranger then completed two documents which he represented to be identical versions of an agency contract. Because the farmer did not have his glasses with him and, in any event, "could not read without spelling out every word," 31 Kan. at 480, 2 P. 580, the stranger purported to read the document to the farmer. No mention was made of any note. Both men signed each document, with the farmer not intending to sign anything but a contract of agency. Ultimately, it was established that at least one of those documents was a promissory note. A *bona fide* purchaser of that note brought suit against the farmer, and the farmer attempted to defend the action on the basis of fraud in the factum. After the trial court rejected that defense, the farmer appealed.

The Kansas Supreme Court, in an opinion by Justice David Brewer (later a United States Supreme Court Associate Justice), phrased the issue on appeal as follows: "A party is betrayed into signing a bill or note by the assurance that it is an instrument of a different kind. Under what circumstances ought he to be liable thereon?" 31 Kan. at 482, 2 P. 580. Three alternative answers were then suggested:

One view entertained is, that as he never intended to execute a bill or note, it cannot be considered his act, and he should not be held liable thereon any more than if his name had been forged to such an instrument. A second view is, that it is always a question of fact for the jury whether under the circumstances the party was guilty of negligence. A third is the view adopted by the trial court, that as [a] matter of law, one must be adjudged guilty of such negligence as to render him liable who, possessed of all his faculties and able to read, signs a bill or note, relying upon the assurance or the reading of a stranger that it is a different instrument.

*Id.* Defendant herein would obviously prefer either the first or second alternative. The court, however, made its preference clear:

*We approve of the latter doctrine.* It presents a case, of course, of which one of two innocent parties must suffer; but the *bona fide* holder is not only innocent, but free from all negligence. He has done only that which a prudent, careful man might properly do, while on the other hand the maker of the note has omitted ordinary care and prudence. A party cannot guard against forgery; but if in possession of his faculties and able to read, he can know the character of every instrument to which he puts his signature; and it is a duty which he owes to any party who may be subsequently affected by his act, to know what it is which he signs. By his signature he invites the credence of the world to every statement and promise which is in the instrument he has subscribed; and he is guilty of negligence if he omits to use the ordinary means of ascertaining what those provisions and statements are. If he has eyes and can see, he ought to examine; if he can read, he ought to read; and he has no right to send his signature out into the world affixed to an instrument of whose contents he is ignorant. If he relies upon the word of a stranger, he makes that stranger his agent. He adopts his reading as his own

knowledge. What his agent knows, he knows; and he cannot disaffirm the acts of that agent done within the scope of the authority he has intrusted to him.

*Id.,* 31 Kan. at 482–83, 2 P. 580 (emphasis added). Although *Ort* is of rather ancient vintage, this aspect of the decision has been cited with approval as recently as 1966. *See Mid Kansas Federal Savings & Loan Ass'n v. Binter,* 197 Kan. 106, 110, 415 P.2d 278, 282 (1966).

■ It is obvious from reading defendant's deposition that he is able to read and understand the English language. Thus, under the rule announced in *Ort,* defendant was negligent in relying on Gilbert's assurance that the note was only a receipt. Given the 1983 Kansas Comment referring to the *Ort* absence-of-negligence standard as "comparable to that required by [K.S.A. 84–3–305(2)(c)]," we must also conclude that defendant has failed to show the "excusable ignorance" necessary to establish fraud in the factum. In the words of the statute, we conclude as a matter of law that defendant had a "reasonable opportunity to obtain knowledge of [the document's] character" before he signed it.

Defendant's second argument, assuming that we reject his contention that he neither knew nor had reasonable opportunity to know the "character" of the document he signed, is that he had no such opportunity to learn of the note's "essential terms." Because the note's execution date, maturity date, principal amount and interest rate were all blank when defendant signed the note, he asserts that he had *no* (let alone a reasonable) opportunity to learn of those terms. On its face, this argument has great appeal; but defendant's reliance thereon is foreclosed by other Code provisions.

■ Questions arising from incomplete instruments and material alterations are governed by K.S.A. 84–3–115 and –407, respectively. The former provides as follows:

(1) When a paper whose contents at the time of signing show that it is intend-

ed to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed.

(2) *If the completion is unauthorized the rules as to material alteration apply (section 84-3-407).*

K.S.A. 84-3-115 (emphasis added). Because defendant claims not to have authorized anyone to complete the note as it now reads, we are referred by part (2) of this section to K.S.A. 84-3-407. The latter statute provides, in part, as follows:

(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, *and when an incomplete instrument has been completed, he may enforce it as completed.*

K.S.A. 84-3-407(3) (emphasis added). As a holder in due course, plaintiff is thus entitled to enforce this note as it was eventually completed—and not merely as defendant would have authorized it to be completed.

■ The fraud allegedly committed by Gilbert does not affect this conclusion. We learn from Official UCC Comment 4 to K.S.A. 84-3-407 that "this result is intended even though the instrument was stolen from the maker or drawer and completed after the theft." In other words, one who signs an instrument before all essential terms have been completed creates a "blank check" that may be enforced by a subsequent holder in due course according to any terms that are completed by an intervening holder. *See* K.S.A. 84-3-305, Kansas Comment 1983. That was precisely what happened here. Defendant executed the note in blank; an intervening holder completed the note as it reads today; and plaintiff, as a holder in due course, is entitled to enforce the note according to its present terms. Defendant's only legal recourse is against the intervening holder who actually completed the note without defendant's authorization. As between the parties *now* before the court, we must grant plaintiff's motion for summary judgment.

III. *Defendant's Motion for Leave to File a Demand for Jury Trial Out of Time.*

Having granted plaintiff's motion for summary judgment, defendant's jury trial request is now moot. It will thus be denied on that basis.

ORDER

IT IS THEREFORE ORDERED that defendant's motion to dismiss for lack of personal jurisdiction is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted.

IT IS FURTHER ORDERED that defendant's motion for leave to file a demand for jury trial out of time is denied as moot.

The clerk is directed to enter judgment in favor of plaintiff Federal Deposit Insurance Corporation, and against defendant Gary Culver, in the amount of $50,000.00, plus interest thereon at the rate of 14.5 percent per annum from August 2, 1984, to February 2, 1985, and at the rate of 18.5 percent per annum thereafter until and including the day said judgment is paid in full.

IT IS SO ORDERED.